No. 90–15187.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1990.

Decided March 8, 1991.

**Norma Kay HUBBARD, Individually, and on Behalf of all Plaintiffs Similarly Situated, Plaintiff–Appellant,**

v.

**UNITED AIRLINES, INC., a Delaware Corporation, the Pacific Ins. Co., Ltd., a Hawaii Corp., Hartford Life & Accident Company, Inc., a Connecticut Corporation, Defendants–Appellees.**

Kurt A. Gronau, Honolulu, Hawaii, for plaintiff-appellant.

Richard M. Rand, Torkildson, Katz, Jossem, Fonseca, Jaffe & Moore, and Diane W. Wong, Libkuman, Ventura, Ayabe, Chong & Nishimoto, Honolulu, Hawaii, for defendants-appellees.

Before SKOPIL, BEEZER and FERNANDEZ, Circuit Judges.

BEEZER, Circuit Judge:

Norma Kay Hubbard appeals the district court's order granting a motion to dismiss her RICO action against her employer and other defendants. 741 F.Supp. 195. The district court concluded that the Railway Labor Act (RLA) preempts her claims. We affirm.

I

Hubbard's complaint alleged RICO violations—mail fraud and wire fraud—and various state law claims [1] against her employer, United Airlines, and against United's claims adjusters, Pacific and Hartford.[2] Specifically, Hubbard alleged the defendants defrauded her by paying her disability benefits in an amount less than that provided for in the collective-bargaining

---

1. Hubbard does not dispute that if the district court correctly dismissed the RICO claims, the pendent state claims also must be dismissed.

2. Hubbard's allegations were made on her own behalf and on behalf of all others similarly situated. Hubbard, however, never moved to certify a class before the district court dismissed her complaint.

agreement (CBA) between Hubbard's union and United.[3]

■■■■ The district court determined that Hubbard's RICO claims involved a minor dispute [4] because the claims are founded on the obligation—contained in the CBA—to pay worker's compensation at a certain rate. The court therefore dismissed the claims as preempted.

We review *de novo* whether Hubbard's claim is preempted. *Operating Eng's v. Wilson*, 915 F.2d 535, 537–38 (9th Cir.1990).

## II

In *Atchison, Topeka & S.F. Ry. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), the Supreme Court held that the RLA does not preempt a claim under the Federal Employers' Liability Act (FELA). The union member in *Buell* alleged that he suffered severe personal injuries as a result of a railroad's failure to provide him a safe place to work. In rejecting the argument that his FELA claim was preempted by the RLA, the Supreme Court noted that the FELA provides railroad workers with substantive protection against negligent conduct. FELA's protection is independent of the employer's obligation under its CBA and affords injured

3. The method of determining benefits is set forth in section 29 of the CBA between the Association of Flight Attendants and United. That section provides, in relevant part:
   A. Worker's Compensation Benefits shall be provided by the Company for all flight attendants as follows:
   1. Overwater flight attendant Worker's Compensation shall be in the amounts equal to those prescribed by the Federal Longshoremen's and Harbor Worker's Compensation Act, as amended, or the Worker's Compensation Law of the States of California or Illinois, whichever Act provides the higher benefits. See Complaint, CR 1 (Exh. 5).

4. Disputes between an employee and an airline under the RLA are either major or minor. Minor disputes concern the interpretation or application of CBAs and are resolved through binding arbitration before the System Board of Adjustment. *International Ass'n of Machinists & Aerospace Workers v. Aloha Airlines*, 776 F.2d 812, 815 (9th Cir.1985); *see* 45 U.S.C. § 184 (disputes "growing out of grievances, or out of interpretation or application of agreements concerning rates of pay, rules, or working conditions" must be resolved through grievance procedures provided for in collective-bargaining agreement); *cf. Regional Airline Pilots Ass'n v.*

workers a remedy suited to their needs. *See Buell*, 480 U.S. at 565, 107 S.Ct. at 1415.

The Supreme Court in *Buell* relied upon a line of previous cases in which arbitration pursuant to a CBA was held not to preclude a later claim based on a federal statute. The Court stated:

Although the analysis under each statute is quite distinct, the theory running through these cases is that notwithstanding the strong policies encouraging arbitration, "different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers."

*Id.* (quoting *Barrantine v. Arkansas–Best Freight System*, 450 U.S. 728, 737, 101 S.Ct. 1437, 1443, 67 L.Ed.2d 641 (1981)).[5]

The district court concluded that RICO is not a statute designed to provide minimum substantive guarantees to individual workers. During the hearing on the motion to dismiss, the court emphasized that there was no reason to suspect that arbitration would not provide Hubbard with an ade-

*Wings West Airlines*, 915 F.2d 1399, 1400 (9th Cir.1990) (airlines' unilateral change in working conditions after certification of union but before collective-bargaining process had begun could not be minor dispute because no CBA existed). An adjustment board created under the RLA has exclusive jurisdiction over minor disputes. *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 109 S.Ct. 2477, 2481, 105 L.Ed.2d 250 (1989); *Aloha*, 776 F.2d at 815.

5. *See, e.g., McDonald v. City of West Branch*, 466 U.S. 284, 288–92, 104 S.Ct. 1799, 1801–04, 80 L.Ed.2d 302 (1984) (arbitration of grievance pursuant to CBA does not preclude claim under 42 U.S.C. § 1983), *Barrantine*, 450 U.S. at 742–45, 101 S.Ct. at 1445–47 (submission of wage claims to grievance committee pursuant to CBA does not preclude federal claim under Fair Labor Standards Act); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44–47, 94 S.Ct. 1011, 1017–19, 39 L.Ed.2d 147 (1974) (arbitration of claim based on nondiscrimination clause in CBA does not preclude claim under Title VII); *see also McAlester v. United Airlines*, 851 F.2d 1249, 1254–55 (10th Cir.1988) (RLA does not preempt claim for discriminatory discharge under 42 U.S.C. § 1981).

quate remedy for the underpayment of worker's compensation she alleged. The court distinguished the cases in which the Supreme Court held that arbitration of a labor dispute does not preclude a claim under a federal statute. All of those cases involved either (1) statutes specifically designed to guarantee rights not requiring interpretation of a CBA, or (2) union violence wholly unrelated to the application or interpretation of a CBA.

### III

■ Hubbard argues the district court erred. She relies on a recent Supreme Court case addressing a similar issue: the preemptive effect of § 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), on state claims. Cases under the LMRA do not control this case, however, because preemption under the RLA is broader than under § 301. *Grote v. Trans World Airlines*, 905 F.2d 1307, 1309–10 (9th Cir.1990). Even if preemption under the LMRA provided a proper analogy, the cases cited by Hubbard would not dictate a different result in her case.

In *Lingle v. Norge Division of Magic Chef*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), an employee was fired after filing a worker's compensation claim. Her union filed a grievance pursuant to the CBA's prohibition against discharge except for "proper" or "just" cause. After prevailing in arbitration, the employee brought a state claim under an Illinois statute that prohibits retaliatory discharge. The Supreme Court reversed the *en banc* decision of the Seventh Circuit and held that, even if resolution of the two claims would require addressing precisely the same set of facts, "as long as the state-law claim can be resolved without interpreting the [CBA] itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id.* at 410, 108 S.Ct. at 1883; *see also Operating Eng's v. Wilson*, 915 F.2d 535, 539–40 (9th Cir.1990) (following *Lingle* and holding that § 301 does not preempt state tort claim for fraud in the inducement of CBA).

■ Hubbard argues that her claims should not be preempted because the obligation under the CBA is practically undisputed,[6] so the RICO claims can be resolved without interpreting the agreement itself. Hubbard ignores the fact that the duty, the violation of which formed the predicate acts for the RICO claims, arose entirely out of the CBA. As this court stated recently, when determining whether a dispute is minor,

> [one] looks to whether a claim has been made that the terms of an existing agreement either establish or refute the presence of a right to take the disputed action. The distinguishing feature of [a minor dispute] is that the dispute may be conclusively resolved by interpreting the existing agreement.

*Regional Airline Pilots Ass'n v. Wings West Airlines*, 915 F.2d 1399, 1400 (9th Cir.1990) (quoting *Consolidated Rail Corp.*, 109 S.Ct. at 2481). Thus, where "the dispute grows out of the employment relationship, and, in the final analysis, is an attempt to impose a right incident to that relationship, the statutory forum is the adjustment board." *Railway Labor Executive Ass'n v. Atchison T. & S.F. Ry.*, 430 F.2d 994, 997 (9th Cir.1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971); *see also Consolidated Rail Corp.*, 109 S.Ct. at 2489 (railroad's inclusion of drug testing in physical examinations is arguably justified by implied terms of CBA and thus is minor dispute under RLA).

■ In the context of the LMRA, the Supreme Court has held that "[s]ection 301(a) governs claims founded directly on rights created by collective-bargaining agreements, *and also* claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987) (emphasis added) (quoting *International Bhd. of Electrical Workers v. Hechler*, 481 U.S. 851, 859 n. 3, 107 S.Ct. 2161, 2167 n. 3, 95 L.Ed.2d 791 (1987)). Thus, whether a claim requires interpretation of the collective-bar-

---

**6.** As the district judge stated, the defendants "all but concede" that they have not paid benefits at the rate provided for in the CBA. *See* CR 25, at 3.

gaining agreement is only relevant when it first is determined that the claim is not founded directly on rights created by the agreement. *Stikes v. Chevron USA, Inc.*, 914 F.2d 1265, 1267–68 (9th Cir.1990); *cf. United Steelworkers of Am. v. Rawson*, — U.S. ——, 110 S.Ct. 1904, 1910, 109 L.Ed.2d 362 (1990) (state claim of negligence preempted by § 301 where duty to inspect mine arose out of CBA, even though duty of care arguably was defined by state law); *Miller v. AT & T Network Sys.*, 850 F.2d 543, 548–51 (9th Cir.1988) (§ 301 does not preempt Oregon statute prohibiting discharge of handicapped employee, but does preempt state claim of intentional infliction of emotional distress).

### IV

■ Hubbard's reliance on fraud claims under the RICO statute and her vague references to "criminal activity" do not change the result in this case. It matters not that Hubbard alleges deliberate underpayments of an undisputed obligation. Hubbard based her RICO claims on predicate acts that involve violation of a right created by the CBA. Thus, her exclusive remedy is arbitration before the System Board of Adjustment.

■ Interpreting the National Labor Relations Act, the Ninth Circuit has held that the NLRA does not preempt a criminal RICO action based on acts of violence committed during a lawful strike. *See United States v. Thordarson*, 646 F.2d 1323, 1331 (9th Cir.), *cert. denied*, 454 U.S. 1055, 102

S.Ct. 601, 70 L.Ed.2d 591 (1981). In *Thordarson*, we stated:

> In this case, the undisputed availability of state criminal law demonstrates that the procedures and civil sanctions set forth in the National Labor Relations Act were not intended to be the exclusive means of regulating violence to achieve collective bargaining objectives.

*Id.* In contrast, it appears that federal labor law was intended to provide the exclusive remedy for generic fraud claims relating to rights under a CBA. If the same predicate acts were the basis of state claims for fraud or intentional infliction of emotional distress, they would be preempted by the RLA.[7] Hubbard cannot evade preemption through "artful pleading" of the claims as RICO claims. *See Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir. 1988); *Magnuson v. Burlington Northern*, 576 F.2d 1367, 1369 (9th Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).[8]

The Fifth Circuit's decision in *Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990), does not help Hubbard. *Landry* involved RICO allegations of mail fraud and wire fraud against an airline, the pilots' union and a union representative. The alleged fraud occurred during negotiations between the union and the airline over the airline's attempts (1) to relocate its pilot base from New Orleans to El Salvador, (2) to termi-

---

**7.** Cases interpreting the preemptive effect of the RLA on state claims include *Leu v. Norfolk & W. Ry.*, 820 F.2d 825, 829 (7th Cir.1987) (state fraud claims preempted by RLA because obligation to pay medical expenses arose from CBA as an incident of employment relationship, even though responsibility to pay was not specific provision of agreement); *Grote v. Trans World Airlines*, 905 F.2d 1307, 1309–10 (9th Cir.1990) (RLA preempts state claims of wrongful termination, breach of covenant of good faith and fair dealing, intentional and negligent infliction of emotional distress and defamation, where termination stemmed from alleged attempt to force employee to perjure himself in connection with medical certification and certification was at least arguably governed by CBA); *Beers v. Southern Pac. Trans. Co.*, 703 F.2d 425 (9th Cir.1983) (RLA preempts state claim of intentional infliction of emotional distress based on work conditions, disciplinary procedures and

representation rights related to CBA); *Magnuson v. Burlington Northern*, 576 F.2d 1367, 1368–69 (9th Cir.) (RLA preempts state claim of intentional infliction of emotional distress based on alleged wrongful discharge), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).

**8.** The only other district court to address this issue reached the same conclusion as the district court in this case. *See Pride v. Venango River Corp.*, 1989 WL 90167 (S.D.Ill.1989) (RLA preempts RICO claim based on duty arising from CBA); *see also Butcher's Union Local No. 498 v. SDC Investment*, 631 F.Supp. 1001, 1010–11 (E.D.Cal.1986) (conduct constituting an unfair labor practice is subject to NLRB's exclusive jurisdiction and cannot form predicate acts for RICO claim, but violation of 29 U.S.C. § 186 is explicit, statutory exception to this rule).

nate the existing CBA and (3) to withdraw its recognition of the pilots' union. Preemption was no longer an issue in *Landry* because the case involved an attempt to terminate the CBA, not an attempt to interpret or apply it. Thus, the case involved a major, not a minor, dispute. *Ruby v. TACA Int'l Airlines S.A.*, 439 F.2d 1359, 1364 (5th Cir.1971) (controversy over attempt to relocate pilot base from New Orleans to El Salvador "was and is a major dispute").

██ The predicate acts for Hubbard's RICO claims would not be wrongful in the absence of the obligation contained in the collective-bargaining agreement. This dispute is an attempt to enforce a contractual right incident to the employment relationship. Therefore, Hubbard's claims are preempted by the Railway Labor Act, which requires resolution of this dispute through other proceedings. The district court is AFFIRMED.

SKOPIL, Circuit Judge, concurring separately:

I concur in the result.