Robert M. UNDERWOOD, John E. Reathaford, Ronald C. Poland, et al., Plaintiffs–Appellants,

v.

VENANGO RIVER CORPORATION, Illinois Central Gulf Railroad Company, Whitman Corporation, f/k/a IC Industries, Incorporated, et al., Defendants–Appellees.

No. 91–3739.

United States Court of Appeals, Seventh Circuit.

Argued June 5, 1992.

Decided May 28, 1993.

Kevin T. Hoerner (argued), Kassly, Bone, Becker, Dix, Reagan & Young, Belleville, IL, for plaintiffs-appellants.

Gregory S. Davis, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Venango River Corp.

William J. Billeaud, St. Louis, MO, Kenneth Jonson (argued), Steptoe & Johnson, Washington, DC, for Illinois Central Gulf R. Co.

John P. Scotellaro, Kenneth E. Rechtoris, Bell, Boyd & Lloyd, Chicago, IL, for Whitman Corp.

Francis D. Morrissey, Thomas A. Doyle, Baker & McKenzie, Chicago, IL, William J. Billeaud, St. Louis, MO, Kenneth Jonson, Steptoe & Johnson, Washington, DC, for Harry Bruce, Henry Borgsmiller and Richard Bessette.

Before COFFEY and FLAUM, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

COFFEY, Circuit Judge.

The plaintiff-appellant Robert Underwood along with 217 other plaintiffs have alleged that the defendants committed acts of wire fraud and mail fraud in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.* The district court granted the defendants' motion to dismiss the plaintiffs' fourth amended complaint for lack of subject matter jurisdiction on the ground that the Railway Labor Act (RLA), 45 U.S.C. § 151, *et seq.*, preempted the plaintiffs' claims. We affirm.

## I. FACTS

The plaintiff-appellants are former employees of the Illinois Central Railroad Company (ICRR). ICRR is a wholly owned subsidiary of the Whitman Corporation (formerly IC Industries, Inc. (ICI)). In an effort to make

the company more profitable, ICRR began to sell off some of its less profitable railway lines—including the Chicago–Kansas City line. On July 28, 1986, ICRR entered into a contract with the Chicago, Missouri & Western Railroad Company (CMW), a wholly owned subsidiary of the defendant Venango River Corporation, for the sale of the Chicago–Kansas City line. Pursuant to this sale, ICRR executed a traffic protection agreement in which it agreed to use its best efforts to maintain traffic volume to, from and over the 633–mile Chicago–Kansas City line at the previous level. Additionally, ICRR encouraged the plaintiffs to resign their positions and accept employment with CMW stating that their new employer would continue the present benefit package and job security that ICRR had offered. The plaintiffs resigned from ICRR and accepted employment with CMW, but about one year after the sale of the Chicago–Kansas City line, CMW filed for bankruptcy due to the unprofitability of the recently acquired lines.

With CMW's filing in bankruptcy, the plaintiffs lost the severance pay and seniority benefits they would have been entitled to had they remained with ICRR. The plaintiffs brought suit alleging that ICRR engaged in a pattern of racketeering and fraudulent misrepresentation in order to induce them to accept employment with CMW, thus depriving them of seniority rights and severance pay in violation of RICO.

The issues before this court are whether the Railway Labor Act (RLA) preempts the plaintiffs' RICO claim and whether the district court appropriately dismissed the RICO claim for lack of subject matter jurisdiction.

## II. DISCUSSION

■ We review the grant of a motion to dismiss a complaint for lack of subject matter jurisdiction *de novo*. *Gorski v. Troy*, 929 F.2d 1183, 1186 (7th Cir.1991); *see also Hubbard v. United Airlines, Inc.*, 927 F.2d 1094, 1096 (9th Cir.1991) (reviewing *de novo* the dismissal of a RICO claim that the trial court determined to be preempted by the Railway Labor Act).

### A. Characterization of the Dispute

■ The RLA, 45 U.S.C. § 151, *et seq.*, grants the National Railway Adjustment Board (NRAB) jurisdiction over all "disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the *interpretation or application of agreements concerning rates of pay*, rules, or working conditions...." *Id.* § 153 First (i) (emphasis added). The Supreme Court has determined that the NRAB has exclusive jurisdiction over "minor" disputes, *Union Pacific R.R. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978), because "Congress considered it essential to keep the so-called 'minor' disputes within the adjustment board and out of the courts." *Id.* A minor dispute is one that "may be conclusively resolved by interpreting the existing agreement." *Consolidated Rail v. Railway Labor Exec. Ass'n*, 491 U.S. 299, 305, 109 S.Ct. 2477, 2481, 105 L.Ed.2d 250 (1989); *see also Atchison, Topeka & Santa Fe Ry. v. United Transportation Union*, 734 F.2d 317, 321 (7th Cir.1984) ("whether the conflict can be resolved by reference to an existing agreement").[1] When in doubt, this court has construed disputes as minor.

---

1. The Supreme Court has defined "major" and "minor" disputes as follows:

   "The first [major] relates to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or whether it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.

   "The second class [minor], however, contemplates the existence of a collective bargaining agreement concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded on some incident of the employment relation, or asserted one, independent of those covered by the collective agreement, *e.g.*, claims on account of personal injury. In either case, the claim is to rights accrued not merely to have new ones created for the future."

   *Elgin, J. & E. Ry. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945).

*National Railway Labor Conf. v. International Ass'n of Machinists & Aerospace Workers,* 830 F.2d 741, 746 (7th Cir.1987).

Clearly, the plaintiffs' claim for severance pay and seniority rights is based on an existing collective-bargaining agreement (CBA) and may be "conclusively resolved by interpreting the existing [CBA]." *Consolidated Rail,* 491 U.S. at 305, 109 S.Ct. at 2481. Accordingly, we are of the opinion that this is a minor dispute falling under the exclusive jurisdiction of the NRAB. *Chicago & Northwestern Transportation Co. v. Railway Labor Executives' Ass'n,* 908 F.2d 144, 157–58 (7th Cir.1990), *cert. denied,* 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991), (holding that the impact of a sale of a railway line upon employees' severance and seniority benefits is a "minor" dispute).

### B. Preemption under the RLA

Having concluded that the plaintiffs' claim is a minor one, we must now determine whether the plaintiffs' allegation of RICO violations removes this matter from the jurisdiction of the NRAB. The plaintiffs argue that federal statutes governing rights not found within the CBA fall outside of RLA preemption and may be adjudicated in federal courts. In this instance, the plaintiffs allege that RICO creates a substantive right for an employee to have his employer refrain from racketeering conduct that injures the employee. 18 U.S.C. § 1961(1) (prohibiting *inter alia* mail and wire fraud). The plaintiffs assert that an interpretation of the CBA is not at issue because the defendants' wrongful actions (a series of misrepresentations and fraudulent acts) occurred outside the workplace. Accordingly, the plaintiffs maintain that they are entitled to federal court jurisdiction because they have alleged violations that are beyond the realm of workplace practices governed by collective-bargaining agreements.

Initially, we must determine just what Congress' intention was regarding the scope of RLA preemption. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985) (holding that Congress' intent is "the ultimate touchstone"). The plaintiffs herein attempt to determine Congress' intent through reliance on cases interpreting preemption provisions of federal statutes other than the RLA such as § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158. We will examine the cases decided under those statutes as well as the cases interpreting the RLA. Only one circuit court has addressed the question before us of whether Congress intended the RLA to preempt RICO claims. In *Hubbard v. United Airlines, Inc.,* 927 F.2d 1094 (9th Cir. 1991), the Ninth Circuit held that the RLA preempted the plaintiff's RICO claim because the rights the defendant violated in that case originated in the CBA.

### 1. Preemption of state law claims under other federal statutes

In *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Supreme Court addressed the preemptive effect of § 301(a) of the LMRA, 29 U.S.C. § 185(a), on state law claims. In *Lingle,* an employee was released after filing a workers compensation claim. The employee brought a grievance before the arbitration board claiming that the company lacked "just cause" to discharge her. The Board found in her favor and ordered her reinstatement with full backpay. The employee sought additional relief and filed a claim in state court alleging a violation of the Illinois workers' compensation laws prohibiting retaliatory discharge. The suit was removed to federal court on the basis of diversity of citizenship. The Supreme Court ultimately ruled that

"while there may be instances in which the National Labor Relations Act pre-empts state law on the basis of the subject matter of the law in question, § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend on the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand,

and state law, on the other, would require addressing precisely the same set of facts, *as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.*"

*Lingle,* 486 U.S. at 408–10, 108 S.Ct. at 1883 (footnotes omitted) (emphasis added). As we will discuss below, because the Supreme Court has interpreted the scope of the preemption clause in the RLA much more broadly than the preemption clause in the LMRA, cases decided under the LMRA do not serve as binding precedent for cases under the Railway Labor Act. *See Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 565, 107 S.Ct. 1410, 1415, 94 L.Ed.2d 563 (1987) ("the analysis of the question under each statute is quite distinct"). Nonetheless, *Lingle* is helpful because it held that Congress intended to preempt only those claims in which a court would be required to interpret the CBA. The *Lingle* holding has direct bearing on the case before us because in order for the plaintiffs herein to obtain relief the trial court must interpret the CBA.

Valuable guidance regarding Congress' intent in the matter of preemption is also set forth in *Farmer v. United Brotherhood of Carpenters,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). In *Farmer,* the plaintiff alleged various unfair labor practices and a state tort claim for intentional infliction of emotional distress. Although the state tort claim arose from a campaign against the plaintiff involving hiring hall referral discrimination under the NLRA, 29 U.S.C. § 158, the Supreme Court held that the NLRA did not preempt the claim because of the strong state interest in protecting its citizens from extremely abusive conduct. The Court declared that "inflexible application of the [preemption] doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal scheme." *Id.* at 302, 97 S.Ct. at 1064. The substantial State interest rested in remedying extremely abusive acts. *Id.* at 305, 97 S.Ct. at 1066. The Court also refused to preempt the state

law claim because it could "be adjudicated without resolution of the 'merits' of the underlying labor dispute." *Id.* at 304, 97 S.Ct. at 1065.

To summarize the reasoning in *Lingle* and *Farmer,* preemption of state law claims by federal statutes should occur only when the source of the claim involves rights created in the CBA including but not limited to, wages, benefits, and terms of employment. "[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the [CBA]." *Lingle,* 486 U.S. at 410, 108 S.Ct. at 1883. Significantly, both *Lingle* and *Farmer* involved state law claims (in contrast with the federal RICO claim in the instant case), requiring the court to exercise deference toward interests traditionally protected by the states. *See id.; Farmer,* 430 U.S. at 297, 97 S.Ct. at 1062.

### 2. Preemption of federal claims under the RLA

In contrast to those decisions declining to preempt state law claims, are those dealing with the preemption of claims based on federal legislation. For example, despite the exclusive jurisdiction of the NRAB, *Atchison, Topeka & Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), recognized the right of a railroad employee to pursue an action under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq.* The plaintiff alleged that he suffered severe personal injuries resulting from the railroad's failure to provide a safe workplace. The Court refused to read the RLA as "depriv[ing] an employee of his opportunity to bring an FELA action for damages." *Id.* at 564, 107 S.Ct. at 1415. The Court recognized that "FELA not only provides railroad workers with substantive protection against negligent conduct that is independent of the employer's obligations under its collective-bargaining agreement, but also affords injured workers a remedy suited to their needs, unlike the limited relief that seems to be available through the [NRAB]." *Id.* at 565, 107 S.Ct. at 1415. Although the CBA may have provided a remedy for an

employee exposed to an unsafe place of employment, the Court determined in *Buell* that FELA was the proper statutory remedy for such a claim. *Id.* The Court reasoned that FELA claims survive RLA preemption because Congress intended FELA to be the statutory remedy for employees injured through employer negligence. *Id.* at 565–66, 107 S.Ct. at 1415–16. The Court distinguished the FELA claim in *Buell* with the state law claim in *Andrews v. Louisville and Nashville R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), and concluded that the FELA serves as the federal statutory remedy for employees injured through employer negligence whereas state law claims are preempted under the exclusive jurisdiction of the RLA. *Id.* 480 U.S. at 566, 107 S.Ct. at 1416. In *Andrews,* a railroad employee brought a state law wrongful discharge claim based on a breach of rights created by the CBA. The Court dismissed Andrews' claim, holding that it was preempted by the exclusive jurisdiction of the NRAB because resolution of the claim would require interpretation of the CBA. *Id.* 406 U.S. at 324, 92 S.Ct. at 1565. Thus the claim was a minor dispute which had to be resolved before the NRAB.

■ It is appropriate at this juncture to acknowledge that there is a difference in the scope of preemption under § 301(c) of the LMRA versus preemption under the Railway Labor Act. Factually, *Lingle* and *Andrews* are quite similar (each involved an employee bringing a state law wrongful discharge claim), yet the Supreme Court reached opposite conclusions because it chose to interpret the scope of the preemption clause in the RLA somewhat more broadly than the preemption clause in the LMRA. In *Lingle* (an LMRA case), the Court held that the state law claim for retaliatory discharge *survived preemption by the* LMRA as long as the trial court was not required to interpret the CBA. 486 U.S. at 408–10, 108 S.Ct. at 1883. Conversely, in *Andrews,* the Court determined that the RLA *preempted the employee's state law wrongful discharge claim* because the

Railway Arbitration Board had exclusive jurisdiction over matters requiring interpretation of the CBA. 406 U.S. at 324, 92 S.Ct. at 1565. When facing the question of preemption under the RLA, the Ninth Circuit held in *Hubbard* that the plaintiff's reliance on *Lingle* failed to support her claim that the RLA did not preempt RICO: "Cases under the LMRA do not control this case ... because preemption under the RLA is broader than under § 301." 927 F.2d at 1097 (citing *Grote v. Trans World Airlines,* 905 F.2d 1307, 1309–10 (9th Cir.1990)); *cf. Lancaster v. Norfolk and Western Ry. Co.,* 773 F.2d 807, 816–17 (7th Cir.1985) (decided before *Lingle,* refusing to rule the RLA preemptive force greater than that of the NLRA).[2] The Supreme Court's decisions in *Lingle* and *Andrews* support the position that preemption under the RLA is broader than preemption under the LMRA, thus, we are in agreement with the Ninth Circuit's holding in *Hubbard* that cases decided under the LMRA do not dictate the result in RLA cases.

In *Barrentine v. Arkansas–Best Freight System,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Supreme Court reached a conclusion similar to that in *Buell* in a case involving the Fair Labor Standards Act (FLSA), 29 U.S.C. § 206. In *Barrentine,* an arbitration board denied the plaintiffs' wage claims under the CBA. Subsequently, the plaintiffs filed an FLSA action in federal court. Ultimately, the Supreme Court held that "the FLSA was designed to give specific minimum protections to individual workers and to insure that each employee covered by the Act would receive 'a fair day's pay for a fair day's work.'" *Id.* at 739, 101 S.Ct. at 1444 (quoting *Overnight Motor Transportation Co. v. Missel,* 316 U.S. 572, 578, 62 S.Ct. 1216, 1220, 86 L.Ed. 1682 (1942)). In rejecting the defendant's position that the employees' only remedy was arbitration, the Court declared "[w]hile courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement,

---

**2.** Our conclusion that the scope of RLA preemption is broader than preemption under the LMRA or NLRA does not diminish the value of LMRA and NLRA cases by way of analogy to RLA cases.

*See Leu v. Norfolk & Western Ry. Co.,* 820 F.2d 825 (7th Cir.1987); *Choate v. Louisville & Nashville R. Co.,* 715 F.2d 369, 371 (7th Cir.1983).

different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide substantive guarantees to individual workers." *Id.* 450 U.S. at 737, 101 S.Ct. at 1443. The Court further noted (1) that some arbitrators might not be competent to interpret the FLSA statute, and (2) that the arbitrators' authority originates in and is expressly limited to the language contained in the collective-bargaining agreement. *Id.* at 743, 101 S.Ct. at 1446. Thus FLSA claims must be adjudicated in federal court and not before an arbitrator.

In *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), the Supreme Court considered whether a discharged employee may bring a 42 U.S.C. § 1983 action despite an arbitrator's adverse decision based on the CBA and the plaintiff's failure to appeal the arbitrator's ruling. The Court relied on *Barrentine* and concluded that "according preclusive effect to arbitration awards in § 1983 actions would severely undermine the protection of federal rights that the statute is designed to provide." *Id.* at 292, 104 S.Ct. at 1804. In *Barrentine* and *McDonald* the Court relied on the "conclusion that Congress intended the statutes at issue ... to be judicially enforceable and that arbitration could not provide an adequate substitute for judicial proceedings in adjudicating claims under those statutes." *Id.* at 289, 104 S.Ct. at 1802.

### 3. Lower court rulings on preemption

There are also several relevant circuit court and district court opinions that serve to guide us in the resolution of this dispute. In *Deford v. Soo Line R. Co.*, 867 F.2d 1080 (8th Cir.1989), railroad employees brought state law conspiracy claims in federal court against the railroad for actions that jeopardized employees' wages, vacation pay, insurance benefits, pension contributions, and severance benefits under existing collective-bargaining agreements. The district court dismissed the state law claims for fraud, conspiracy and tortious interference with creditor's rights holding that they were preempted by the RLA. *Id.* at 1083. The Eighth Circuit opinion in *Deford* contains a thorough discussion of the preemptive effect of the RLA. *Id.* at

1084–86. ("[t]here is overwhelming case law to support [the] decision that the RLA's preemptive force is so extraordinary that it takes over the whole field of railroad labor disputes arising from collective-bargaining agreements"). The plaintiffs in *Deford* asserted that the state law claims were independent of the CBA. The court concluded, however, that the RLA did in fact preempt the plaintiffs' state law claims, because the state law claims were "not substantive in nature, but instead merely confer[ed] an alternate remedy for protecting pre-existing ... rights. The ... rights a party seeks to enforce must exist under independent law, such as contract law." *Id.* at 1087. Ultimately, the court reasoned that all the plaintiffs' state law claims depended on an interpretation of the CBA, accordingly, the RLA preempted the claims.

Two cases from this circuit shed light on the case at hand. In *Choate v. Louisville and Nashville R. Co.*, 715 F.2d 369 (7th Cir.1983), we held that *Farmer*, 430 U.S. at 305, 97 S.Ct. at 1066, barred a railroad employee's recovery under state law for emotional distress. *Farmer* stated "it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself." *Id.* In *Choate*, we concluded that "[The plaintiff's] allegations do not allege a state tort sufficiently separate from the labor dispute to permit concurrent jurisdiction." *Choate*, 715 F.2d at 371. Because the plaintiff's cause of action arose from the underlying labor dispute, "[t]he adjudication of his claim would necessarily involve interpretation of the collective bargaining agreement and would thus infringe on the exclusive jurisdiction of the N.R.A.B." *Id.* at 372. Additionally, we found the alleged conduct did not rise to the level of abuse required by *Farmer*. *Id.*

In *Leu v. Norfolk & Western Ry. Co.*, 820 F.2d 825, 829–31 (7th Cir.1987), we held that the RLA preempted the appellants' state law fraud and conversion claims because resolution of the claims would require the court to interpret the CBA. The plaintiffs in *Leu*

also relied on *Farmer*, and once again, we distinguished *Farmer* in holding that the plaintiffs' claims failed to allege the necessary degree of abusive conduct. *Id.* at 831. In our discussion of the abusive conduct, we declared that the state's interest in protecting against fraud and conversion was of a different nature and degree than in *Farmer*. *Id.* We also noted, that "the potential for interference with the federal labor scheme is too great to allow an exception to preemption." *Id.* at 831.

Four district courts have specifically addressed the issue of preemption vis-a-vis RICO claims. *See Pride v. Venango River Corp.*, No. 89–5012, 1989 WL 90167, 1989 U.S. Dist. LEXIS 17283 (S.D.Ill. May 10, 1989) (holding that the RLA preempted the plaintiffs' RICO claim), *dismissed* 916 F.2d 1250 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1696, 114 L.Ed.2d 89 (1991); *McDonough v. Gencorp., Inc.*, 750 F.Supp. 368 (S.D.Ill.1990) (concluding that the NLRA preempted the plaintiff's RICO claim); *Brown v. Keystone Consolidated Industries, Inc.*, 680 F.Supp. 1212 (N.D.Ill.1988) (holding that the LMRA preempted the plaintiff's RICO claim). Only *Hood v. Smith's Transfer Corp.*, 762 F.Supp. 1274 (W.D.Ky.1991), concluded that the RICO claim survived preemption. *Hood* rejected the theory that a RICO claim premised on factors requiring interpretation of a collective-bargaining agreement was preempted by the NLRA because "violations of NLRA sections 7 and 8 can never satisfy the predicate acts requirement of RICO and, accordingly, any jurisdictional conflict between the NLRA and RICO is merely illusory." *Hood*, 762 F.Supp. at 1287. The court reasoned that since Congress did not intend sections 7 and 8 of the NLRA to create criminal sanctions, they could not serve as a predicate for RICO violations. "Obviously, if a RICO claim cannot be based on predicate acts of unfair labor practices, there simply can be no problem of a jurisdictional conflict between the courts and the NLRB." *Id.*

◼ In discerning congressional intent regarding preemption of claims, the cases set forth a two-step analysis for determining when Congress intended to preempt a claim. The first step asks whether the claim seeks to vindicate a substantive right derived from some source other than the collective-bargaining agreement. Examples include FELA claims, FLSA claims, § 1983 claims, and state tort claims. If a claim survives the first inquiry, the second step asks whether adjudication of the claim requires interpretation of the CBA. When such interpretation is required, it impermissibly interferes with the federal scheme for labor dispute resolution. Claims falling in this category include state tort claims that are principally a restatement of an employment right created by the CBA and thus must be remedied through the arbitration process. A caveat exists for state tort claims alleging extreme conduct that is so abusive that the state has an interest in providing a remedy therefor. *See Farmer*, 430 U.S. at 305, 97 S.Ct. at 1066. In regard to the second inquiry, the Supreme Court has gone so far as to say the claim may arise from the exact same facts that would support a labor dispute claim, as long as an interpretation of the CBA is not required. *Lingle*, 486 U.S. at 408–10, 108 S.Ct. at 1883.

## C. *Application of the two-step analysis to plaintiffs' claim*

◼ The first inquiry is whether a RICO claim vindicates an independent substantive right derived from a source other than the CBA. The Ninth Circuit, in *Hubbard*, 927 F.2d 1094, held that a RICO claim is preempted by the RLA because

> "The predicate acts for Hubbard's RICO claims would not be wrongful in the absence of the obligation contained in the collective-bargaining agreement. This dispute is an attempt to enforce a contractual right incident to the employment relationship. Therefore, Hubbard's claims are preempted by the Railway Labor Act, which requires resolution of this dispute through other proceedings."

*Id.* at 1098. *Hubbard* cautioned that "[the plaintiff] cannot evade preemption through 'artful pleading' of the claims as RICO claims." *Id.* In the present case, the plaintiffs have attempted through "artful pleading"—by avoiding reference to specific provi-

sions of the CBA—to circumvent jurisdiction under the RLA. The plaintiffs assert that "the 'rights' to which [they] have been deprived include the right of an employee to have an employer refrain, both in and out of the workplace, from conduct which is prohibited under RICO." The plaintiffs, thus, are attempting to analogize their case to *Buell* (involving federally created rights of an employee to a negligence-free workplace), to *Barrentine* (protecting employees' salary rights), and *McDonald* (permitting § 1983 claims). Try as they might, the plaintiffs simply cannot overcome the fact that their RICO claim alleging generic wire and mail fraud depends solely upon an interpretation of the rights created in the collective-bargaining agreement because the severance pay and job security rights they seek to enforce originate in the CBA.

Seeking to avoid the conclusion that their claim is grounded in the CBA, the plaintiff-employees argue that most of the alleged fraudulent activity occurred outside the workplace and subsequent to their termination by ICRR. They contend that the CBA cannot possibly govern such extra-workplace conduct. Again, the plaintiffs are missing the central point that the rights they are seeking to vindicate derive not from the timing of the fraudulent activity but from the collective-bargaining agreement. Even if the plaintiffs' allegations are true, the court must look to the CBA to ascertain their rights because the seniority and severance benefits in question originate in the CBA. As we have discussed above, the RLA preempts all minor disputes that may be resolved by interpretation or application of the CBA.

The plaintiffs contend that the RLA should not preempt the claim because the district court could decide the RICO claim without infringing on the federal scheme for regulating labor. This argument also must fail. The only rights the plaintiffs seek to vindicate through their RICO claim, i.e. seniority and severance benefits, originate in the CBA. Therefore, the plaintiffs do not even reach the second inquiry which deals with the impact on the federal regulatory scheme because they have failed to demonstrate that their claim vindicates an independent substantive right from a source other than the CBA. Even within the framework of the second question, an interpretation of the CBA would ensue which presumptively interferes with the federal scheme. We echo the sentiments of the Ninth Circuit which held:

> "Reliance on fraud claims under the RICO statute and [the plaintiff's] vague references to 'criminal activity' do not change the result in this case. It matters not that [the plaintiff] alleges deliberate underpayments of an undisputed obligation. [The plaintiff] based her RICO claims on predicate acts that involve violation of a right created by the CBA. Thus, her exclusive remedy is arbitration before the system board of adjustment."

*Hubbard*, 927 F.2d at 1098.

The plaintiffs have further argued that the acts of the defendants constitute abusive conduct, and therefore *Farmer* dictates a remedy beyond that of arbitration. We disagree. First, *Farmer* is distinguishable from the case at bar because no state interest is involved, thus there is no need for the federal court to defer to that state interest. Second, we hold that the conduct in question is not nearly as abusive as that in *Farmer*. In fact, the dispute in question is the very type of matter the NRAB is readily equipped to resolve because it involves interpreting rights in the CBA. The rights that the plaintiffs assert—to severance benefits and job security—constitute a minor dispute that cannot be "resolved without interpreting the [CBA] itself," *Lingle*, 486 U.S. at 410, 108 S.Ct. at 1883, therefore the RLA preempts the plaintiffs' claim.

Finally, the plaintiffs contend that the NRAB is ill-equipped, and unauthorized to handle the complex issues resulting from a RICO violation. Plaintiffs rely principally on the Supreme Court's holdings in *Buell, Barrentine* and *McDonald*. We fully agree with the plaintiffs that the NRAB lacks the authority and the expertise to adjudicate RICO cases. Our holding today, however, does not assign that responsibility to the NRAB. Rather, we hold that plaintiffs have failed to demonstrate a substantive right derived from some source other than the collective-bargaining agreement. Accordingly, the NRAB

need not adjudicate a RICO claim, instead it must only determine the plaintiffs' right to severance pay and seniority benefits accrued under an existing CBA. Because the Railway Labor Act preempts the plaintiffs' RICO allegation in their fourth amended complaint, the district court's dismissal of the complaint for lack of subject matter jurisdiction is

AFFIRMED.[3]

---

**3.** Because we hold that the district court lacked subject matter jurisdiction, there is no need to address whether the plaintiffs sufficiently pleaded their RICO claim.