**CHICAGO DISTRICT COUNCIL OF CARPENTERS PENSION FUND, et al., Plaintiff,**

v.

**CEILING WALL SYSTEMS, INC., Rosemont Contractors, Inc., Machon Enterprises, Inc., Charles Sellergren, and Richard Machon, Defendants.**

No. 94 C 4423.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 6, 1996.

herein have been deemed relevant for the purposes of this motion to dismiss, stay or transfer.

Judith Ann Nash, Hugh J. McCarthy & Associates, Ltd., Chicago, IL, Joseph Patrick Berglund, Niew & Associates, Hinsdale, IL, Terrance Bryan McGann, Daniel Paul McAnally, Janet Lynn Adams, Mary Elizabeth Halloran, Collins P. Whitfield & Associates, Chicago, IL, for plaintiffs.

Edward Allen Villadonga, Mt. Prospect, IL, for Ceiling Wall Systems, Inc.

Louis G. Hector, Evanston, IL, for Rosemont Contractors, Inc., Machon Enterprises, Inc., Charles Sellergren, Richard Machon.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

The Chicago District Council of Carpenters Pension Fund, et al. ("Funds") sued Defendants Ceiling Wall Systems, Inc. ("Ceiling"), Rosemont Contractors, Inc. ("Rosemont"), Machon Enterprises, Inc. ("Machon"), Charles Sellergren, and Richard

Machon alleging violations of Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a)-(c). The Funds allege that Defendant Ceiling Wall Systems failed to contribute the proper amount of fringe benefits to the Funds, as it is required to do under an Agreement whereby it agreed to be bound by the provisions of a Collective Bargaining Agreement ("CBA"). Plaintiffs seek to recover treble the allegedly past due contributions as well as interest, liquidated damages, costs, and attorneys' fees. The case is before the Court on Defendant Charles Sellergren's Motion to Dismiss Counts II, III, IV, and V of Plaintiffs' Amended Complaint.

## ALLEGED BACKGROUND

The Funds are multiemployer plans that receive contributions from numerous employers pursuant to Collective Bargaining Agreements between the employers and the Chicago and Northeast Illinois District Council of Carpenters, successor of the Chicago District Council of Carpenters. The Agreement and Collective Bargaining Agreements bind Defendant Ceiling Wall Systems to the provisions of the Agreement and Declarations of Trust that created those Funds. Pursuant to the CBA, Defendants are required to make contributions to the Funds for each hour worked by their carpenter employees at the rate and in the manner specified in the CBA. Additionally, Defendant is required to make contributions to the Funds measured by the hours worked by subcontractors that are not signatory to a CBA with the Union.

Plaintiffs allege that Defendants Rosemont and Machon are the alter egos of Ceiling in that their business transactions and operations are intermingled, the employees of all three have been paid for work within the occupational scope of the CBA performed for Ceiling out of accounts of the other two, and Rosemont and Machon are controlled and operated by the managers and controllers of Ceiling. Plaintiffs allege that the corporate defendants breached the CBA by underpay-

ing contributions owed to the Funds. Further, Plaintiffs allege that Defendants Sellergren and Machon are the alter egos of the corporate defendants in that the individual defendants: (1) transfer funds between themselves and the corporations; (2) make loans without the requisite formalities between themselves and the corporations; (3) have common control of the corporations' daily operations; and (4) commingle assets, equipment, and vehicles with the corporations. Accordingly, Plaintiffs allege that failure to pierce the corporate veil and allow compliance with the CBA from Sellergren and Machon would result in injustice and perpetuate a fraud. Thus, Plaintiffs allege that Sellergren and Machon breached the CBA by underpaying owed contributions to the Funds.

Finally, Plaintiffs allege that Sellergren and Machon engaged in a scheme to defraud the Funds of the benefits created in the CBA and used the U.S. mail in furtherance of the scheme. Plaintiffs describe the scheme as follows: Defendants use the corporate names interchangeably "to identify their single business operation when it will serve their economic interest" and "refer to Ceiling as a signatory/union company and Rosemont and Machon Enterprises as non-signatory companies." (Compl. ¶ 11). Each week Defendants give their employees two different paychecks, one printed with the signatory company's name and the other with one of the non-signatory company's names, even though the employees only worked for one company that week. Further, each week the employees turn in one sheet of paper listing their total hours worked rather than turn in separate sheets listing the number of hours worked for each Defendant. Sellergren and Machon allegedly divide the total number of hours reported by the employees between the three companies, regardless of the actual division of work between the three companies, and call in the payroll for the alleged three separate companies into a payroll service. (Compl. ¶ 14). Plaintiffs allege that Sellergren and Machon intentionally and fraudulently omit the total number of hours on the monthly fringe benefit contribution reports that are sent through the U.S. mail. Further, Defendants alleged-

ly fraudulently misrepresented that their signatory company included two non-signatory companies, thus enabling them to circumvent their obligations to submit full contributions to the Funds while successfully bidding and working projects that require union affiliation. Plaintiffs allege that Defendants mailed the reports monthly since June of 1990, thus engaging in a pattern of racketeering activity with each mailing constituting a predicate act of mail fraud that was related to the others and posing a continuous threat of harm. The three companies, with the latter two being alter egos of the first, allegedly constituted the enterprise. Accordingly, Plaintiffs complain that Sellergren and Machon violated: (1) § 1962(a) of RICO because they used or invested the extra income gained from the activity in the operations of the enterprise, (Count III); (2) § 1962(b) of RICO because they acquired or maintained control of the enterprise through the activity, (Count IV); and (3) § 1962(c) because they are associated and employed by the enterprise to conduct the enterprise's affairs through the activity.

## ANALYSIS

The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *Adams v. Cavanagh Communities Corp.,* 847 F.Supp. 1390, 1396 (N.D.Ill.1994). In order to survive a motion to dismiss, a complaint must allege sufficient facts to outline a cause of action. *Davis v. Frapolly,* 747 F.Supp. 451 (N.D.Ill.1989). The complaint "must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co.,* 758 F.2d 203, 207 (7th Cir.1985).

The Court must accept as true all well-pleaded factual allegations in the complaint and view them, along with the reasonable inferences to be drawn, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High Sch. Dist. No. 230,* 991 F.2d 1316, 1324 (7th Cir.1993). However, the Court need not accept conclusory legal allegations as true. *Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 730 (7th Cir.1994). A

strict standard applies when a court evaluates the legal sufficiency of a plaintiff's factual allegations. A court may grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Cushing v. City of Chicago,* 3 F.3d 1156, 1159 (7th Cir.1993).

## I. Motion to Dismiss Count II

Sellergren moves the Court to dismiss Count II pursuant to Rule 9(b) for failure to allege fraud with particularity and Rule 12(b)(6) for failure to "properly allege that Sellergren and Ceiling are alter egos." Fed. R.Civ.P. 9(b), 12(b)(6).

The parties do not dispute that Illinois law governs whether the corporate veil will be pierced in this case. *Plumber's Pension Fund Local 130 v. Niedrich,* 891 F.2d 1297 (7th Cir.1989), *cert. denied,* 495 U.S. 930, 110 S.Ct. 2169, 109 L.Ed.2d 499 (1990). Illinois law follows a two-pronged test: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Hystro Products, Inc. v. MNP Corp.,* 18 F.3d 1384, 1388–89 (7th Cir.1994) (quoting *Van Dorn Co. v. Future Chem. & Oil Corp.,* 753 F.2d 565, 569–70 (7th Cir.1985)). Defendant's attempt to apply the particularity requirement of Rule 9(b) to alter ego allegations must fail. Rather, Plaintiffs allege that the failure to pierce the corporate veil would result in injustice and would perpetuate a fraud. Illinois law requires only that in order to satisfy the second prong there be "some element of unfairness, something akin to fraud or deception or the existence of a compelling public interest." *Pederson v. Paragon Pool Enter.,* 214 Ill.App.3d 815, 158 Ill.Dec. 371, 574 N.E.2d 165 (1st Dist.1991), *appeal denied,* 141 Ill.2d 545, 162 Ill.Dec. 493, 580 N.E.2d 119 (1991). Thus, because fraud is not a prerequisite to piercing the corporate veil,

Rule 9(b) does not apply to alter ego allegations.

■ Likewise, the Court denies Sellergren's motion to dismiss for failure to state a claim for piercing the corporate veil. Plaintiffs' satisfy the first prong of the Illinois standard with the following allegations:

(1) the transfer of funds between Sellergren and the corporate Defendants; (2) loans made between Sellergren and the corporate Defendants without the requisite formalities; (3) the failure of Sellergren to operate at arms length with the corporate Defendants; and (4) the commingling of assets and identities between the corporate Defendants and Sellergren.

Further, Plaintiffs have alleged that failure to pierce the corporate veil would promote injustice or perpetuate a fraud. Indeed, the Seventh Circuit has explained that "[i]n cases involving claims to pension benefits protected by ERISA, it has been recognized that there is a federal interest supporting disregard of the corporate form to impose liability." *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 460 (7th Cir.1991). Thus, Plaintiffs' allegations are sufficient to survive a motion to dismiss.

## II. Motion to Dismiss RICO Counts

Sellergren moves the Court to dismiss Counts III, IV, and V, which allege RICO claims pursuant to 18 U.S.C. § 1962(a)-(c) and predicate acts of mail fraud, for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Namely, Sellergren contends that the RICO claims are preempted by § 8 of the National Labor Relations Act ("NLRA") and § 301 of the Labor Management Relations Act ("LMRA"). 29 U.S.C. §§ 185 & 158.

■ In support, Defendant cites *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 662 (7th Cir.1992), where the Seventh Circuit held that the NLRA preempted a RICO claim because "the underlying conduct of the plaintiffs' RICO claim is wrongful *only by virtue of the labor laws.*" The *Talbot* Defendants allegedly used the U.S. mail in furtherance of three frauds: (1) the fraudulent transfer of plaintiffs' employment; (2) the fraudulent termination of plaintiffs' employ-

ment; and (3) the Union's failure to fairly represent them in arbitration. *Id.* In finding that the NLRA preempted a RICO claim based on this activity, the Seventh Circuit distinguished the Third Circuit's holding in *United States v. Boffa*, 688 F.2d 919, 930–33 (3d Cir.1982), *cert. denied*, 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983) that the NLRA does not preempt RICO claims based on activity arguably prohibited by the NLRA, namely, alleged use of the U.S. mail in furtherance of a scheme to defraud employees of economic benefits created in a collective bargaining agreement. *Talbot*, 961 F.2d at 662. Significantly, the Third Circuit also held that activity analogous to that alleged in *Talbot* could not support a mail fraud claim because it was under the exclusive jurisdiction of the NLRB, namely, a "labor switch" that caused the employees to be fired and not rehired by the second company and was effectuated by influencing their union representative so that they were not fairly represented. *Boffa*, 688 F.2d at 923, 926–30. Because the alleged fraudulent activity in the instant case is analogous to the activity that the Third Circuit found cognizable in a RICO claim based on mail fraud and distinguishable from the activity that both the Third and Seventh Circuits found under the exclusive jurisdiction of the NLRA when alleged in support of a RICO claim, this Court finds that the NLRA does not preempt Plaintiffs' RICO claims. *Cf. Breininger v. Sheet Metal Workers Int'l Assoc.*, 493 U.S. 67, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989) (district court had jurisdiction to hear fair representation claim although union's breach of duty of fair representation might violate § 8(b) of the NLRA) and *International Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 237–39, 91 S.Ct. 609, 612–14, 28 L.Ed.2d 10 (1971) (district court had jurisdiction to hear claim that unlawful expulsion from the union violated § 101(a)(5) of Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(5)).

■ Neither the United States Supreme Court nor the Seventh Circuit has decided whether § 301 of the LMRA may preempt a RICO claim. However, both Courts have extensively addressed preemption of state

claims by § 301. Section 301 preemption is "related to but distinct from" NLRA preemption, which derives from the primary jurisdiction of the NLRB; the preemptive effect of § 301, in contrast, is based upon the necessary federal protection of a uniform body of federal labor law. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 n. 6, 105 S.Ct. 1904, 1911 n. 6, 85 L.Ed.2d 206 (1985). In contrast to the NLRA, Section 301 grants federal courts jurisdiction over such claims. Section 301 preempts state claims, "lest common terms in bargaining agreements be given different and potentially inconsistent interpretations in different jurisdictions." *Livadas v. Bradshaw*, —— U.S. ——, ——, 114 S.Ct. 2068, 2077, 129 L.Ed.2d 93 (1994). It is well-established that § 301 preempts "state laws purporting to determine 'questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement.'" *Id.* at ——, 114 S.Ct. at 2078 (quoting *Lueck*, 471 U.S. at 211, 105 S.Ct. at 1911). Thus, the Supreme Court has "stressed that it is the legal character of a claim, as 'independent' of rights under the collective bargaining agreement, that decides whether the state cause of action may go forward." *Id.* Further, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id.*

Defendant relies upon *Underwood v. Venango River Corp.*, 995 F.2d 677 (7th Cir. 1993), *overruled on other grounds by Hawaiian Airlines, Inc. v. Norris*, —— U.S. ——, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), where the Seventh Circuit held that the Railway Labor Act ("RLA") preempts a RICO claim. Although the Seventh Circuit has not addressed whether § 301 of the LMRA preempts RICO claims, the Seventh Circuit's reasoning in *Underwood* applies equally well to the instant matter. Accordingly, the Court feels compelled to hold that § 301 preempts Plaintiffs' RICO claims. In *Underwood*, the Seventh Circuit noted that cases regarding the preemptive effect of

§ 301 are "helpful" and "valu[able] ... by way of analogy to RLA cases." *Id.* at 681 & 682 n. 2. As the Seventh Circuit discussed, the Supreme Court has repeatedly declined invitations to preempt federal claims, namely: (1) the Federal Employers' Liability Act, in *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987); (2) 42 U.S.C. § 1983, in *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); and (3) the Fair Labor Standards Act, in *Barrentine v. Arkansas–Best Freight Sys.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). However, the *Underwood* Court distinguished RICO from the other federal claims on the grounds that it does not seek to vindicate an independent substantive right derived from a source other than the collective bargaining agreement. *Underwood*, 995 F.2d at 684–86. The Court held that this failure is evidence that Congress intended the RLA to preempt RICO claims. *Id.* Thus, the court found it unnecessary to determine whether adjudication of the RICO claim requires interpretation of the collective bargaining agreement. *Id.* Because the Seventh Circuit relied heavily on cases interpreting the preemptive effect of the LMRA, this Court finds that *Underwood's* reasoning applies equally well to the instant case, where the obligation at issue was created by a collective bargaining agreement. Indeed, the Supreme Court has subsequently noted the relevance of state preemption principles to preemption of another federal claim. *Hawaiian*, —— U.S. at —— n. 6, 114 S.Ct. at 2247 n. 6. Moreover, the Supreme Court has explained that "[t]he pre-emption standard that emerges from the line of cases leading to *Buell*—that a state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the collective bargaining agreement—is virtually identical to the pre-emption standard the Court employs in cases involving § 301 of the LMRA," thus adopting the LMRA standard of pre-emption to resolve claims of RLA pre-emption. *Id.* at —— & ——, 114 S.Ct. at 2247 & 2249.[1]

---

1. Because the Seventh Circuit held that RLA preemption is broader in scope than LMRA pre-emption, *Underwood*, 995 F.2d at 682, that holding of *Underwood* is overruled. Nevertheless, as

Having held that the Court lacks subject matter jurisdiction over the RICO claims, the Court need not determine the remaining grounds advanced by Defendant in support of his Motion to Dismiss the RICO claims.

## CONCLUSION

For the given reasons, the Court DENIES Defendant Sellergren's Motion to Dismiss Count II and GRANTS Defendant Sellergren's Motion to Dismiss Counts III, IV, and V.

explained above, the Seventh Circuit relied heavily on LMRA cases in reaching its conclusion that the RLA preempted a RICO claim, *id.* at 682 n. 2, and reasoned that the RICO claim did not involve any rights that exist independent of the CBA. Accordingly, the *Underwood* holding regarding preemption of RICO claims is still compelling precedent.