Jackie Glen TYREE, Plaintiff,

v.

THE BURLINGTON NORTHERN and SANTA FE RAILWAY COMPANY and Raymond R. Stimart, Defendants.

No. 97–2148–M1/V.

United States District Court,
W.D. Tennessee,
Western Division.

July 30, 1997.

Jefferson D. Gilder, Gilder Law Firm, Southaven, MS, for Plaintiff.

Everett B. Gibson, Everett B. Gibson Law Firm, Memphis, TN, Charles W. Shewmake, Burlington Northern Railroad Co., Fort Worth, TX, for Defendants.

## ORDER REMANDING CASE TO STATE COURT

McCALLA, District Judge.

Plaintiff, Jackie Glen Tyree, brings this action against his employer, Burlington Northern and Santa Fe Railway Company ("BNSF"), and Raymond S. Stimart, a superintendent at BNSF, for libel, malicious prosecution, and intentional and/or negligent inflic-tion of emotional distress. Before the Court is defendants' motion for summary judgment, filed April 30, 1997. Although the parties have not raised any questions regarding this Court's jurisdiction, the Court is obliged to raise the issue sua sponte whenever it appears that the Court may not have jurisdic-tion. *Philbrook v. Glodgett,* 421 U.S. 707, 721, 95 S.Ct. 1893, 1902, 44 L.Ed.2d 525 (1975) ("[W]e have repeatedly held that we must take note of want of jurisdiction in the district court even though neither party has raised the point."); *Franzel v. Kerr Mfg. Co.,* 959 F.2d 628, 630 (6th Cir.1992) (holding that "subject-matter jurisdiction may be raised at any time, by any party or even sua sponte by the court itself"). For the reasons set forth below, the Court finds that it does not have jurisdiction over plaintiff's claims and RE-MANDS the case to the Circuit Court of Tennessee, Thirtieth Judicial District at Memphis, Shelby County, Tennessee.

## BACKGROUND

BNSF operates a transportation system by rail with operations in over thirty (30) states and maintains a train terminal in Memphis, Shelby County, Tennessee. BNSF is a carrier as that term is defined in the Railway Labor Act ("RLA"), 45 U.S.C. § 151–188. As part of its operations, BNSF has various collective bargaining agreements with its union represented employees, including a 1980 agreement, commonly referred to as the "Blue Book", with the Brotherhood of Railway and Airline Clerks ("BRAC"), the prede-cessor to the Transportation Communications Union ("TCU"). Plaintiff is a clerical em-ployee of BNSF and is represented by TCU. The terms and conditions of plaintiff's em-ployment are governed by the Blue Book.

This action grows out of a train derailment that occurred in Memphis, Tennessee, on November 5, 1995. At the time of the derail-ment, plaintiff was working as the train di-rector. On November 10, 1995, because BNSF was concerned that Tyree's acts or omissions could have played a part in the derailment, Terminal Superintendent Stimart served a Notice of Investigation on plaintiff. A Notice of Investigation is required by the

collective bargaining agreement before any discipline can be assessed.

The investigation into plaintiff's conduct was held on December 19, 1995. Subsequently, on December 29, 1995, plaintiff received a ninety (90) day suspension as discipline for his involvement in the derailment. On February 16, 1996, plaintiff's union representative, D.G. Howell, appealed the ninety day suspension, alleging various violations of the collective bargaining agreement. On March 25, 1996, plaintiff's appeal was denied by BNSF. On April 30, 1996, TCU's General Chairman, R.A. Arndt, once again appealed the discipline against plaintiff. On June 14, 1996, BNSF Director of Labor Relations, L.L. Broxterman, denied plaintiff's claim and appeal.

Subsequently, however, plaintiff's claims were settled by removing the ninety day suspension from his personnel record and by compensating him for sixty-eight (68) days lost wages. Specifically, the settlement provided:

> In conference it was agreed this claim would be settled on a compromise basis by removing the 90 day suspension from Mr. Tyree's personal [sic] record and by compensating him for 68 days lost wages (including 20 minute penalty lunch for each day) totaling $9,766.50; it being understood that such settlement is made without prejudice to either party's contentions concerning the application of schedule rules, and that the proposal or acceptance thereof will not be referred to as a precedent by either party in any other case under any circumstance.

In addition to its duties under the collective bargaining agreement, BNSF is required by federal law to make certain reports to the Federal Railroad Administration ("FRA"), including reports for accidents or incidents involving rail equipment or rail employees. 49 U.S.C. §§ 20901–20903. Pursuant to 49 C.F.R. § 225.12, BNSF is also required to file an Employee Human Factor Attachment if it attributes any human factor in the accident or incident. The November 5, 1995 derailment at Memphis caused sufficient damage to railroad property that the incident was required to be reported to the FRA. Consequently, in December 1995, as part of BNSF's monthly report of rail accidents/incidents, the Memphis derailment was reported to the FRA. In addition, because it believed that plaintiff was a contributing factor to the derailment, BNSF filed a report pursuant to 49 C.F.R. § 225.12, identifying plaintiff as a contributing factor in the derailment.

Pursuant to the federal regulations, 49 C.F.R. § 225.12, plaintiff was provided with notice of this filing with the FRA and given an opportunity to supplement the record. Apparently, plaintiff never submitted any documents to the FRA.

On February 10, 1997, plaintiff filed this action in state court, alleging causes of action for libel, malicious prosecution, and intentional/negligent infliction of emotional distress. On February 25, 1997, defendants removed this case to this Court on the basis of diversity and federal question jurisdiction.

On April 30, 1997, defendants filed a motion for summary judgment, arguing that plaintiff's claims arise out of either the grievance processes of the RLA or the mandatory system for reporting rail accidents and incidents administered by the FRA, 49 U.S.C. §§ 20901–20903, and are therefore preempted by federal law. On May 28, 1997, plaintiff filed a response, arguing that, pursuant to *Hawaiian Airlines v. Norris*, 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), plaintiff's causes of action are not preempted by the RLA and that federal law does not prohibit a suit based on statements contained in a FRA report. On May 30, 1997, this matter was heard by the Court at motion call.

## REMOVAL JURISDICTION

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." In their notice of removal, defendants assert that removal is proper because this Court has original jurisdiction on two grounds. First, defendants argue that

this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) (diversity jurisdiction) because the matter in controversy allegedly exceeds the sum of $75,000, exclusive of interest and cost, and is between citizens of different states. Alternatively, defendants argue that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this cause of action is governed by both the RLA, 45 U.S.C. §§ 151–188, and the mandatory reporting procedures of 49 U.S.C. §§ 20901–20903.

■ Defendants' reliance on diversity jurisdiction as a basis for removal is misplaced. Although the language of § 1441(a) appears to make removal jurisdiction coextensive with the original jurisdiction of the federal courts, it is well settled that removal jurisdiction is not as extensive as original jurisdiction. For example, a case cannot be removed on the basis of diversity jurisdiction if any one of the defendants in the action is a citizen of the State in which such action is brought. 28 U.S.C. § 1441(b); *see also* 28 U.S.C. § 1445 (setting forth nonremovable actions). In their notice of removal, defendants assert that defendant Stimart is a citizen of the State of Tennessee. Accordingly, by the plain language of § 1441(b), defendants are precluded from relying on 28 U.S.C. § 1332(a) as a basis for removal.

■ The ability of a defendant to remove an action is further limited by the well-pleaded complaint rule. Under this rule, in order to base removal jurisdiction on § 1331, the federal claim(s) must appear on the face of the complaint. *Gully v. First Nat'l Bank,* 299 U.S. 109, 113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936); *Louisville & Nashville R.R.*

*v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). As a general rule, therefore, the assertion of a federal defense, including preemption, does not provide a sufficient basis for removal. *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983). The Supreme Court, however, has established an exception to the well-pleaded complaint rule, known as the "complete preemption" doctrine. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393–94, 107 S.Ct. 2425, 2430–31, 96 L.Ed.2d 318 (1987); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987); *Franchise Tax Bd.,* 463 U.S. at 22–26, 103 S.Ct. at 2852–55; *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968).[1] Under this doctrine, "if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise Tax Bd.,* 463 U.S. at 24, 103 S.Ct. at 2854; *accord Taylor,* 481 U.S. at 63–64, 107 S.Ct. at 1546 (holding that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character" and may be removed pursuant to 28 U.S.C. § 1441(a)).

In this case, plaintiff seeks to assert claims that are entirely the product of state law—i.e., libel, malicious prosecution, and intentional/negligent infliction of emotional distress. Thus, no federal cause of action appears on the face of the complaint, and defendants are presumptively precluded from removing this action to federal court.

---

1. A number of courts, following the Supreme Court in *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430 ("There does exist, however, an independent corollary' to the well-pleaded complaint rule, known as the 'complete pre-emption doctrine.'"), have referred to the complete preemption doctrine as a "corollary" to the well pleaded complaint rule. According to Webster's dictionary, however, a corollary is "a proposition that follows upon one just demonstrated and that requires no additional proof." *Webster's Third New Int'l Dictionary* 509 (1986). Because the complete preemption doctrine is not a proposition that follows with little or no proof required from the well-pleaded complaint rule, however,

it is not a corollary to the well-pleaded complaint rule. Referring to the complete preemption doctrine as an "independent corollary" of the well pleaded complaint rule does not cure this deficiency; instead, it creates an oxymoron. By definition, a corollary must stem from some other proposition; in essence, it must have a parent proposition. An independent corollary, however, would have no such parent proposition; indeed, it would be a corollary that follows from nothing. Accordingly, the Court finds that the complete preemption doctrine is more appropriately viewed as an exception to the well-pleaded complaint rule.

Accordingly, the sole question before the Court is whether plaintiff's claims are "necessarily federal in character" so as to support removal jurisdiction.

■ In determining whether plaintiff's claims are necessarily federal in character so as to support removal jurisdiction, the threshold question is one of congressional intent. *Taylor*, 481 U.S. at 64–66, 107 S.Ct. at 1546–48. Unlike normal preemption, however, the inquiry is not merely whether Congress intended uniformity in the field, but whether Congress sought to convert "an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 65, 107 S.Ct. at 1547. In this sense, removal jurisdiction based on "complete preemption" and normal preemption analysis are two separate and distinct concepts: "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted ... does not establish that they are removable to federal court."

2. To date, the Supreme Court has found "complete preemption" in only two circumstances: (1) in actions brought to enforce a collective bargaining agreement under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; and (2) in actions brought to collect benefits under or to enforce rights provided by a plan covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). *E.g., Avco Corp.*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (§ 301 of the LMRA); *Metropolitan Life*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (§ 502(a)(1)(B) of ERISA).

Although the Supreme Court has recently addressed the scope of federal preemption under the RLA, *Hawaiian Airlines v. Norris*, 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), that case dealt only with preemption as a defense to a state law cause of action and not as a basis of removal under the complete preemption doctrine. In particular, the Court notes that the case was before the Supreme Court on a grant of certiorari to the Supreme Court of Hawaii. Moreover, although the case was removed to federal court at one point in the litigation, presumably on the basis of RLA preemption, the case was subsequently remanded to state court for further proceedings. Even assuming that the order remanding the case to state court was appealable, see 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise ...."), once the case was remanded to state court and no appeal was taken to the Ninth Circuit from that order of remand, the propriety

*Caterpillar*, 482 U.S. at 398, 107 S.Ct. at 2432.

Although the Supreme Court has not yet addressed this issue,[2] the Sixth Circuit has implicitly found that the complete preemption doctrine can apply when a defendant asserts a preemption defense under the RLA. *E.g., Beard v. Carrollton R.R.*, 893 F.2d 117, 121 (6th Cir.1989) ("We are satisfied that the instant case was not removed 'improvidently and without jurisdiction ...' "); *McCall v. Chesapeake & Ohio R.R.*, 844 F.2d 294 (6th Cir.1988). Not one of those cases, however, specifically addressed the question of congressional intent. At least one panel, however, did express some uncertainty in finding that a RLA preemption defense supports removal jurisdiction. *Miller v. Norfolk & W. Ry. Co.*, 834 F.2d 556, 564 (6th Cir.1987) ("*If Avco* does apply to RLA cases ...") (emphasis added). Nonetheless, the court chose not to resolve the issue and, instead, only addressed what analysis the district court should follow if the

of that removal was no longer cognizable in any further proceeding.

Furthermore, although the Supreme Court in *Hawaiian Airlines* held that preemption analysis under the RLA should be governed by the same standard governing preemption under the LMRA, *id.* at 263, 114 S.Ct. at 2249 ("Given the convergence in the pre-emption standards under the two statutes, we conclude that *Lingle[ v. Norge Division of Magic Chef. Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988),] provides an appropriate framework for addressing pre-emption under the RLA, and we adopt the *Lingle* standard to resolve claims of RLA preemption."), it does not necessarily follow that a defendant should also be able to remove a case to federal court on the basis of RLA preemption merely because a defendant can remove a case to federal court on the basis of LMRA preemption, see *Avco Corp.*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126. On the contrary, as the Supreme Court has repeatedly noted, removal jurisdiction based on "complete preemption" and normal preemption analysis are two separate and distinct concepts. "The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted. does not establish that they are removable to federal court." *Caterpillar*, 482 U.S. at 398, 107 S.Ct. at 2432. Accordingly, the Court finds that, unlike the normal preemption analysis set forth in *Hawaiian Airlines*, the issue presented here—removal jurisdiction under the RLA—is governed by the standards set forth in *Avco, Franchise Tax Board, Caterpillar,* and *Taylor*.

complete preemption exception did apply to RLA cases. *Id.* ("If *Avco* does apply to RLA cases, how can a court tell whether in any particular case the *Franchise Tax Board* well pleaded complaint rule applies, or the *Avco* complete preemption rule governs?"); *id.* at 566 ("Finally, it should be noted that even if the *Avco* exception might otherwise apply to this case, the defamation action is almost certainly not one which would necessarily be preempted because its resolution would involve interpretation of the collective bargaining agreement.").

Although these cases have not been formally overruled, this Court concludes that they are no longer good law. Specifically, the Court finds that in *Warner v. Ford Motor Co.*, 46 F.3d 531 (6th Cir.1995), the Sixth Circuit, sitting en banc, set forth a standard for determining whether a federal statute satisfies the complete preemption doctrine that directly undermines these previous decisions. In *Warner*, the defendant sought to remove a state age discrimination claim to federal court on the basis that the plaintiff's claim was preempted under ERISA. Specifically, the alleged basis for federal jurisdiction was the express preemption provision of ERISA, 29 U.S.C. § 1144, which states that ERISA shall, with certain exceptions, "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." The district court agreed and subsequently dismissed the complaint as preempted under § 1144. On appeal, the Sixth Circuit reversed, finding that because " § 1144 preemption does not create a federal cause of action itself, [it] cannot convert a state cause of action into a federal cause of

action under the well-pleaded complaint rule. As a consequence, no removal jurisdiction exists under § 1144." *Id.* at 534.

In *Strong v. Telectronics Pacing Systems, Inc.*, 78 F.3d 256 (6th Cir.1996), the court, explaining *Warner*, held "that the congressional intent necessary to confer removal jurisdiction upon the federal district courts through complete preemption is expressed through the creation of a parallel federal cause of action that would 'convert' a state cause of action into the federal cause of action for purposes of the well-pleaded complaint rule." *Id.* at 260. This rationale, requiring that the preempting federal statute create a parallel federal cause of action to replace the preempted state law cause of action is in accord with other circuits. *E.g.*, *Schmeling v. NORDAM*, 97 F.3d 1336 (10th Cir.1996) (per Engel, J.) (sitting by designation) (holding that deciding whether removal is proper under the complete preemption doctrine requires a two step process: "first, whether [the federal laws] preempt the state laws relied on by [plaintiff] . . . ; and second, whether Congress intended to allow removal in such cases, as manifested by the provision of a federal cause of action to enforce the [federal statute]"); *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R.*, 858 F.2d 936, 942 (3d Cir.1988) ("if the federal statute creates no federal cause of action vindicating the same interest the plaintiff's state cause of action seeks to vindicate, recharacterization as a federal claim is not possible and there is no claim arising under federal law to be removed and litigated in federal court.").[3]

**3.** The Court does note the apparent tension between the Sixth Circuit's position in *Warner* and language from the Supreme Court's opinion in *Caterpillar*. In *Caterpillar*, the Ninth Circuit stated that "[a] state law cause of action has been 'completely preempted' when federal law both displaces and supplants the state law—that is, when federal law provides both a superseding remedy replacing the state law cause of action and preempts that state law cause of action." *Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 932 (9th Cir.1986). In a footnote, Justice Brennan, writing for an unanimous Court, rejected this conclusion, finding that it was "squarely contradicted by our decision in [*Avco* ]." 482 U.S. at 391 n. 4, 107 S.Ct. at 2429 n. 4. Justice Brennan's analysis, however, appears to assume

that the Ninth Circuit required that the federal cause of action provide the same remedy as the state cause of action:

> The nature of the relief available after jurisdiction attaches is, of course, different from the question of whether there is jurisdiction to adjudicate the controversy. . . . [T]he breadth or narrowness of the relief which may be granted under federal law in § 301 cases is a distinct question from whether the court has jurisdiction over the parties and the subject matter.

*Id.* (quoting *Avco*, 390 U.S. at 561, 88 S.Ct. at 1237–38); *see Schmeling*, 97 F.3d at 1343 ("Rightly or wrongly, the Supreme Court read the superseding remedy' language as contrary to *Avco's* holding that the nature of the relief avail-

■ Applying these standards to the present case, it is clear that the RLA does not satisfy the complete preemption doctrine because it does not create a parallel federal cause of action. Instead, the RLA requires that all minor disputes—i.e., " 'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation,' " *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253, 114 S.Ct. 2239, 2244, 129 L.Ed.2d 203 (1994) (quoting *Trainmen v. Chicago R. & I.R.*, 353 U.S. 30, 33, 77 S.Ct. 635, 636–37, 1 L.Ed.2d 622 (1957)—be resolved through mandatory arbitration before the National Railroad Adjustment Board. *Id.; Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402–03, 58 L.Ed.2d 354 (1978). Thus, neither the federal courts nor the state courts have jurisdiction to hear these claims. *Railway Labor Executives Ass'n*, 858 F.2d at 943 ("When Congress intends a particular forum to have *exclusive* jurisdiction to determine the rights of the parties in a particular situation, that policy decision deprives other fora of subject matter jurisdiction.") (emphasis added).[4] According-

ly, pursuant to *Warner*, defendants have improperly removed this action on the grounds that it is preempted by the RLA.

■ Likewise, the Court finds that defendants cannot base removal jurisdiction on the grounds that 49 U.S.C. § 20903 satisfies the complete preemption doctrine. Section 20903 provides:

No part of an accident or incident report filed by a railroad carrier under section 20901 of this title or made by the Secretary of Transportation under section 20902 of this title may be used in a civil action for damages resulting from a matter mentioned in the report.

49 U.S.C. § 20903. By its plain language, therefore, § 20903 does not create a federal cause of action; instead, it merely provides a defense in any civil action, state or federal, in which a party seeks to rely on matters mentioned in the report. As noted above, however, "[t]he mere fact that a defendant may ultimately prove that a plaintiff's claims are preempted does not establish that they are

---

able is irrelevant to the jurisdictional question."); Robert A. Ragazzo, Reconsidering the Artful Pleading Doctrine, 44 Hastings L.J. 273, 295 (1993) ("[T]he *Caterpillar* Court seemed to misapprehend the Ninth Circuit's exposition of the replacement preemption model.").

Although this Court agrees that "breadth or narrowness of the relief which may be granted under federal law" is irrelevant to the threshold question of whether the Court has removal jurisdiction over a plaintiff's claims, whether the federal statute creates a federal cause of action, irrespective of the remedies available in that action, is a necessary, although perhaps not sufficient, prerequisite to removal jurisdiction. *Schmeling*, 97 F.3d at 1343; *Railway Labor Executives Ass'n*, 858 F.2d at 942. As noted above, § 1441(a) provides that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States...." At a minimum, therefore, in order for a defendant to remove an action to federal court under § 1441(a), the Court must find that the plaintiff could have filed his complaint in federal court. When the federal statute upon which defendant relies creates no federal cause of action, however, and assuming that there is no other basis for federal jurisdiction, such as diversity of citizenship, there is no basis upon which the plaintiff could have filed his action in federal court in the first place. In essence, "[i]f the

federal statute creates no federal cause of action vindicating the same interest the plaintiff's state cause of action seeks to vindicate, recharacterization as a federal claim is not possible and there is no claim arising under federal law to be removed and litigated in federal court." *Railway Labor Executives Ass'n*, 858 F.2d at 942.

4. The fact that the state courts lack jurisdiction to hear claims involving minor disputes provides an additional argument against removal jurisdiction on the basis of RLA preemption. It is well settled that an action is removable to federal court only if it is also within the subject matter jurisdiction of the state court from which it was removed. As Justice Brandeis stated in *Lambert Run Coal Co. v. Baltimore & Ohio R.R.*, 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922),

As the state court was without jurisdiction over either the subject matter or the United States, the District Court could not acquire jurisdiction over them by removal. The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction.

*Id.* at 382, 42 S.Ct. at 351. Accordingly, if the state court had no jurisdiction over the claims that are preempted pursuant to the RLA, then the federal court could acquire none as a result of removal.

removable to federal court." *Caterpillar,* 482 U.S. at 398, 107 S.Ct. at 2432.

In sum, for the reasons set forth above, the Court finds that "the case was removed improvidently and without jurisdiction." 28 U.S.C. § 1447(c). Accordingly, this case is REMANDED [5] to the Circuit Court of Tennessee, Thirtieth Judicial District at Memphis, Shelby County, Tennessee.[6]

---

**5.** Because this case is being remanded on the grounds that "the case was removed improvidently and without jurisdiction," 28 U.S.C. § 1447(c), the Court notes that this Order may not be appealed, 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise ...."); *see Zuniga v. Blue Cross & Blue Shield of Mich.,* 52 F.3d 1395, 1400 (6th Cir.1995) (holding that " '[i]f a district court remands a case based on the grounds listed in [Section 1447(c)], this [C]ourt cannot review the remand order,' " even if the decision to remand is " 'based on erroneous principles of analysis' ") (quoting *Van Meter v. State Farm Fire & Cas. Co.,* 1 F.3d 445, 449 (6th Cir.1993)).

**6.** Although the Court has not addressed the merits of defendant's motion for summary judgment, the Court is nonetheless compelled to address briefly defendants' arguments in support of its motion for summary judgment. In particular, the Court is troubled by defendants' complete failure to address the impact of *Hawaiian Airlines* in its motion for summary judgment. Prior to the Supreme Court's decision in *Hawaiian Airlines,* a number of courts, including the Sixth Circuit, had held that preemption under the RLA was more pervasive than preemption under the LMRA. *E.g., Henegar v. Banta,* 27 F.3d 223, 226 (6th Cir.1994) ("In short, preemption under the RLA is more pervasive.") (citing *Underwood v. Venango River Corp.,* 995 F.2d 677, 680–81 (7th Cir.1993); *Lorenz v. CSX Transp., Inc.,* 980 F.2d 263, 268–69 (4th Cir.1992); *Hubbard v. United Airlines, Inc.* 927 F.2d 1094, 1097 (9th Cir.1991)) As noted above, however, in *Hawaiian Airlines,* the Supreme Court held that preemption analysis under the RLA is to be governed by the same standards governing preemption analysis under the LMRA. 512 U.S. at 263, 114 S.Ct. at 2249. Despite this clear and unambiguous statement from the Supreme Court and the fact that, in the Sixth Circuit, there is a clear two part test for determining whether a claim is preempted under § 301 of the LMRA, *see DeCoe v. General Motors Corp.,* 32 F.3d 212, 216 (6th Cir.1994), defendants relied solely on cases decided prior to *Hawaiian Airlines* in support of its motion for summary judgment. In addition, defendants' sole references to *Hawaiian Airlines* are contained in a "see generally" cite and as secondary support for the undisputed proposition that minor disputes are subject to the mandatory and exclusive dispute procedures under the RLA. *See Mem. in Supp. of Defs.'s Mot. for Summ. J.* at 4, 5.

Defendants' reliance on the Sixth Circuit's opinion in *Henegar v. Banta,* 27 F.3d 223 (6th Cir.1994), does not cure this deficiency. Although the Court notes that *Henegar* was technically decided one day after the Supreme Court's decision in *Hawaiian Airlines,* it is clear from even the most cursory reading of the two cases that the reasoning and holding of *Henegar* does not survive the Supreme Court's opinion in *Hawaiian Airlines,* and that the conflicting holdings resulted only because the opinions "crossed in the mail." In fact, it is clear that the *Henegar* court realized that the Supreme Court's then expected decision in *Hawaiian Airlines* could affect the disposition of that case. Accordingly, the court decided the case on alternative bases, finding that "even under *Lingle,* there would be preemption on the facts of this case...." *Henegar,* 27 F.3d at 227.