JUDGMENT: AFFIRMED IN PART, REVERSED IN PART
{¶ 1} Appellant Norfolk Western Railway Co. ("Norfolk") appeals the jury's verdict in favor of the appellee, the Estate of Eugene Hager[1]
("Hager"), and the trial court's post-verdict rulings. Norfolk assigns nine errors for our review.[2]
 {¶ 2} Having reviewed the record and pertinent law, we affirm in part and reverse in part the decision of the trial court. We remand the case to the trial court to reduce the verdict by the appropriate set-off amount. The apposite facts follow.
 {¶ 3} On May 16, 2000, Mr. Hager filed a complaint against Norfolk pursuant to the Federal Employers' Liability Act ("FELA") and the Locomotive Inspection Act ("LIA"). He alleged that the railroad failed to provide him with a reasonably safe workplace. He claimed he was exposed to asbestos, silica, and diesel fumes, which caused him to develop asbestosis and chronic pulmonary disease, and aggravated his pre-existing condition of Kartagener's Syndrome.
 {¶ 4} The evidence at trial showed that Hager began his employment with the railroad in 1943 as a mail handler. His duties included loading and unloading mail cars, sorting mail bags, and sweeping the mail platforms. These jobs caused him to breathe in heavy amounts of dust containing asbestos and silica.
 {¶ 5} When the railroad discontinued the use of mail cars in 1971, he became a road fireman. This position required that he ride in the cab in order to assist the engineer. Hager also occasionally helped load coal into the stoker bins. His work in the cabs of the locomotives exposed him to asbestos, diesel exhaust, and other dust.
 {¶ 6} In 1973, he was promoted to the position of locomotive engineer. As an engineer, he operated the train and supervised the train crew. At the age of 61, he accepted a buy-out package and retired in 1987.
 {¶ 7} It is undisputed that Hager suffered from a genetic condition known as Kartagener's Syndrome. According to his physician, Dr. Amin, Kartagener's Syndrome results in an increased susceptibility to exposure of particle matter because the disease affects the cilia function of the lungs. Both Dr. Amin and Hager's expert witness, Dr. L.C. Rao, opined that he suffered from occupationally related asbestosis and that his Kartagener's Syndrome had been aggravated and made worse by his workplace exposure to asbestos and silica dust and diesel exhaust.
 {¶ 8} Norfolk's expert, Dr. Glenn Lillington, a retired pulmonologist, opined that Hager was not suffering from asbestos and that his shortness of breath was caused solely by his Kartagener's Syndrome.
 {¶ 9} After an eight-day trial, the jury determined that Hager's railroad exposures led to his severe lung disease and aggravated his genetic condition. The jury awarded him $250,000 in damages.
 {¶ 10} The trial court denied Norfolk's post-trial motion for a new trial and to reduce the amount of the jury award.
 Jury Selection {¶ 11} In its first assigned error, Norfolk argues the trial court should not have permitted Hager's attorney to preempt a juror for cause for stating she wondered why Hager hired out-of-state attorneys to represent him.
 {¶ 12} Pursuant to R.C. 2313.42(J), good cause exists for the removal of a prospective juror when "he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court." A prospective juror challenged for cause should be excused "if the court has any doubt as to the juror's being entirely unbiased."[3]
 {¶ 13} Trial courts have discretion in determining a juror's ability to be impartial,[4] and such a ruling "will not be disturbed on appeal unless it is manifestly arbitrary * * * so as to constitute an abuse of discretion."[5] The trial court did not abuse its discretion in the instant case. When the jurors were collectively asked if any of them would have a problem with the fact the plaintiff hired counsel from outside the state, the following dialogue occurred:
 "Mr. Ables: Just the fact that myself and my colleagues here are from Buffalo, New York, would any of you hold that against us and view it differently? Our client hired us from West Virginia, we're here in Cleveland, he worked into the Cleveland area. Would any of you hold that against the plaintiff, that he hired lawyers from Buffalo that weren't here from Cleveland?
 "Juror 11: Could I ask why he goes to Buffalo to hire attorneys? "Mr. Ables: I don't know the answer to that question. Would that make a difference to you? "Juror 11: It might. I would be concerned that maybe attorneys in his own area would not feel that he had a case and [he] would go elsewhere.
 "Mr. Ables: If there was no proof of that from the stand, that wasn't part of the evidence —
 "Juror 11: That would be my opinion. I don't know why he would go out of his state and hire attorneys, unless you specialize. "Mr. Ables: We do specialize.
 "* * *
 "Mr. Ables: You would be able to put those feelings aside and decide the case upon the proof and the witness stand?
 "Juror 11: Yeah. The thought would go through my mind. I don't think it would have any bearing on the evidence or what your case is, or decision making."[6]
 {¶ 14} Based on this dialogue, there was evidence that the juror would possibly be influenced by the fact Hager hired outside counsel. Although the juror did state that she did not think it would affect her decision in reaching a verdict, the trial court was in the best position to judge her credibility. The trial court has the opportunity to observe the demeanor of the prospective juror and evaluate first-hand the sincerity of the responses to the questions.[7] Therefore, even where a potential juror states that they can be unbiased during voir dire examination, the trial court can still remove a juror for cause.[8]
Accordingly, Norfolk's first assigned error is overruled.
 Evidentiary Rulings {¶ 15} In its second assigned error, Norfolk contends the trial court made several erroneous evidentiary rulings. In reviewing these arguments, we adhere to the principle that the decision of whether or not to admit evidence rests in the sound discretion of the court and will not be disturbed absent an abuse of that discretion.[9] "The term `abuse of discretion' connotes more than error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."[10] Accordingly, to find an abuse of discretion, we must find that the trial court committed more than a mere error of judgment.
 Videotape Testimony {¶ 16} Norfolk argues the trial court erred in permitting Hager to present videotaped testimony of his co-worker, Scottie Lee Wickham. According to Norfolk, the testimony was irrelevant, cumulative, and prejudicial because the men did not work on the same train together, and Wickham testified regarding his own experience with the railroad. Norfolk also contends the testimony was prejudicial because Wickham was hunched over in pain during much of his testimony.
 {¶ 17} The trial court properly allowed this testimony to be presented. Although Wickham never testified that he and Hager were co-workers, Hager had testified prior to Wickham's testimony that he and Wickham were co-workers. Hager testified that he and Wickham performed the same duties, in the same location, and used the same equipment, during the same period of time when he held the fireman position. Therefore, because they both worked in the same position, they were exposed to the same hazards of asbestos, silica, and diesel fumes. Moreover, Norfolk had the opportunity to cross-examine Hager regarding his job relationship with Wickham when Hager was deposed.
 {¶ 18} Norfolk also alleges that Wickham's appearance was prejudicial because Wickham stated throughout his testimony that he was in pain. However, an edited version of Wickham's testimony was played to the jury. This edited version deleted his statements regarding his pain. In fact, nowhere in the edited version of the testimony does Wickham testify regarding his medical condition. Although he does look sickly in the video, nothing in the video indicates he was suffering from a pulmonary related illness. He was not short of breath and did not have an oxygen tank with him. Accordingly, Norfolk's argument regarding Wickham's testimony is without merit.
 Evidence of Hager's Prior Lawsuits {¶ 19} Norfolk also argues that the trial court erred by not permitting it to present evidence of Hager's prior lawsuits and to read his interrogatory answers and his depositions from those lawsuits. Apparently, Hager entered into settlements with other companies relating to his exposure to asbestos. Norfolk intended to use Hager's statements to impeach his credibility.
 {¶ 20} The trial court properly refused to allow Norfolk to introduce evidence regarding Hager's prior lawsuits after his trial testimony had been completed. The proper time to have pursued this matter would have been when Hager was cross-examined. However, Norfolk failed to ask him regarding his other lawsuits during cross-examination. Norfolk could not then attempt to impeach him by reading his interrogatories and depositions from other lawsuits because this would prevent Hager the opportunity to provide further explanation. Because of his health problems, Hager was not present at the trial, and could not have been called to rebut this evidence. Accordingly, this argument is without merit.
 Federal Railroad Administration Report {¶ 21} Norfolk claims the trial court erred by refusing to allow it to introduce as an exhibit the Locomotive Crash Worthiness and Cab Working Conditions report, which was prepared by the Federal Railroad Administration ("FRA"). These reports contained the investigation results performed by General Electric and the Electromotive Division of General Motors regarding the asbestos exposure in locomotive cabs. Norfolk argues these reports fall under the public records hearsay exception pursuant to Evid.R. 803(8).
 {¶ 22} Under the Federal Rules of Evidence, government evaluative and investigative reports constitute an exception to the hearsay rule. However, Ohio did not adopt this portion of the federal rules relating to government investigative reports.[8] To the contrary, "evaluative and investigative reports * * * are not admissible into evidence as exceptions to the hearsay rule pursuant to Evid.R. 803(B)" in Ohio.[9]
Therefore, the report was properly excluded from evidence.
 {¶ 23} Moreover, the report was published in 1996, nine years after Hager ended his employment with the railroad. There was no evidence presented that any of the statements contained in the report accurately represented the working conditions encountered by Hager between 1943 and 1987.
 {¶ 24} Norfolk contends while the court did not allow the FRA report to be admitted, it did allow the OSHA report to be admitted by Hager, and that this shows an abuse of discretion by the trial court. However, Hager's expert, Dr. Leonard Vance, testified that he worked at OSHA during the time the asbestos standards were developed and that he was directly involved in establishing the standards. Therefore, he had first hand knowledge of the report. In contrast, Norfolk did not have anyone testify who had first hand knowledge of the FRA report. Accordingly, Norfolk's argument related to the trial court's refusal to admit the FRA report is without merit.
 Evidence of Prior Accident {¶ 25} Norfolk claims the trial court erred by allowing Hager's counsel to introduce testimony regarding Hager's exposure to diesel fumes. According to Norfolk, this violated 49 U.S.C. § 20903, which prohibits the use of a FRA incident report in a civil trial.
 {¶ 26} 49 U.S.C. § 20903 provides that no part of a railroad accident or incident report filed with the FRA may be used as evidence at trial.[10] Hager's counsel did not attempt to introduce evidence of an accident report and did not inquire as to Hager's filing of a specific report. In fact, he did not file an accident report regarding his exposure to diesel fumes. Counsel merely asked a hypothetical question regarding whether an injury on the job for which hospitalization is required is an FRA reportable incident. Therefore, it was merely a hypothetical question. Accordingly, because no violation of49 U.S.C. § 20903 occurred, Norfolk's argument has no merit.
 Directed Verdict on Locomotive Inspection Act Claim {¶ 27} In its third assigned error, Norfolk contends the trial court erred by not directing a verdict in its favor regarding Hager's Locomotive Inspection Act (LIA) claim because he failed to show that a defect in the locomotive caused his exposure to diesel fumes.
 {¶ 28} The standard for granting a directed verdict is found in Civ.R. 50(A)(4):
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion * * *.
 {¶ 29} In Strother v. Hutchinson [11] the court explained:
 "The law in Ohio regarding directed verdicts is well formulated. * * * Thus, `if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. Kellerman v. J.S. Durig Co. (1964), 176 Ohio St. 320 [27 O.O.2d 241, 199 N.E.2d 562] * * *.' Hawkins v. Ivy (1977), 50 Ohio St.2d 114, 115 [4 O.O.3d 243, 244, 363 N.E.2d 367, 368]."
 {¶ 30} In the instant case, Hager and his co-workers provided detailed accounts of their exposure to diesel exhaust while in the locomotive cabs. Further, Hager's expert, Dr. Vance, confirmed the presence of diesel fumes in the cabs.
 {¶ 31} Norfolk contends that Hager had to present evidence that a defect in the train's equipment caused the exposure to fumes in order to present a case under the LIA. However, the LIA may be violated in two ways: (1) by failing to comply with Federal Railway Regulations, or (2) by failure to keep the locomotive in safe working condition.[12]
 {¶ 32} C.F.R. 229.43 is a regulation issued by the FRA. It states that products of combustion shall be released outside the locomotive crew cabins. Courts have held that exposure to diesel fumes in locomotive cabs is a direct violation of 49 C.F.R. 229.43, and thus a violation of the LIA.[13]
 {¶ 33} The evidence admitted at trial revealed that diesel exhaust from lead units of the locomotive usually entered the trailing units and that smoke from trailing units sometimes entered those trailing units, depending on the arrangement of that unit. That is, if a trailing unit was "cab forward" its smoke did not enter its cab, but if it was "cab trailing" its smoke did enter its cab.
 {¶ 34} Norfolk's expert Edward English, the former Director of the Office of Safety Assurance and Compliance for the Federal Railroad Administration, testified that Norfolk did not violate 49 C.F.R. 229.43
or the LIA because no defect was present in the exhaust manifold. However, Hager's expert, Dr. Vance, testified as to the presence of diesel fumes in the cab and stated:
 "I hold the opinion that the railroad failed to comply with the regulation that's in the code of Federal Regulation. That is a regulation that provides that products of combustion shall be released entirely outside the cab of a locomotive and other compartments and that exhaust stacks shall be of a sufficient height or other means provided to prevent entry of products of combustion into the cab or other compartments under usual operating conditions. Clearly products of combustion did enter the cab."[14]
Therefore, because evidence was admitted regarding Norfolk's violation of the LIA, the trial court correctly denied the directed verdict. Accordingly, Norfolk's third assigned error is overruled.
 Jury Instruction Regarding Negligence {¶ 35} In its fourth assigned error, Norfolk contends the trial court erred by instructing the jury that they had to find the railroad liable if its negligence played any part, "even the slightest," in producing Mr. Hager's lung condition.
 {¶ 36} This court in Blankenship v. CSX Transp. Inc.,[15] citing to the U.S. Supreme Court decision Rogers v. Missouri P.R. Co. [16] found that "the standard for proximate cause is broader under FELA than the common law. Causation is established if the railroad's negligence `played any part, even the slightest,' in causing the injury." While the U.S. Supreme Court in Rogers admittedly did not decide how the court should instruct a jury in FELA cases, it did interpret the phrase "resulting in whole or in part from the negligence * * * of such carrier" to mean that negligence of an employer did not have to be the sole cause of the injury in order to justify recovery. Rather, under the tenets ofRogers, the standard is whether employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.[17]
 {¶ 37} Here, the fact the court used the words "even in the slightest" imparts the standard that the railroad need not be the sole cause of the injury. The instruction, therefore, appropriately conveyed to the jury that the negligence of Norfolk need not be the sole or only cause of the injury. Accordingly, Norfolk's fourth assigned error is overruled.
 Expert Opinion by Dr. Mayank Amin {¶ 38} In its fifth assigned error, Norfolk argues the trial court erred by allowing plaintiff's treating physician, Dr. Mayank Amin, to express the opinion that Hager suffered from asbestosis because the doctor's opinion was based on the opinions of other experts and reports not admitted into evidence.
 {¶ 39} Evid.R. 703 prevents an expert from giving expert testimony to facts which are not formally in evidence or personally perceived by that expert. However, the Ohio Supreme Court in State v. Solomon,[18]
clarified that Evid.R. 703 is satisfied "where an expert bases his opinion, in whole or in major part, on facts or data perceived by him."[19]
 {¶ 40} Here, Dr. Amin personally examined Hager and treated him for many years. He based his diagnosis of asbestosis on Hager's history of exposure to asbestos, his sufficient latency period in developing the disease, and multiple x-ray reports, including those on record at his own hospital. In fact, the trial court excluded Dr. Amin's testimony based on the excluded x-ray reports. Therefore, the jury never heard his testimony regarding those reports.
 {¶ 41} Although Dr. Amin had reviewed the excluded reports, he also based his diagnoses on the hospital reports from his own hospital. A physician's diagnosis made in the course of his patient's treatment and contained in a hospital record is admissible as a business record.[20]
Further it has been held that the fact a patient's treating doctor did not personally review the patient's x-ray, but rather reviewed the radiologists' reports in treating and diagnosing the patient, goes to the weight, not the admissibility of the doctor's testimony. Accordingly, Norfolk's fifth assigned error is overruled.
 Medical Expenses {¶ 42} In its sixth assigned error, Norfolk argues the trial court erred by allowing Hager to submit his medical expenses to the jury without demonstrating that the services and costs associated therewith were reasonable and necessary.
 {¶ 43} As this court in Wood v. Elzoheary [21] held:
 "[P]roof that described medical care was reasonably necessary for identified injuries may not require expert testimony when that treatment is a matter of common knowledge. The jury may sometimes decide whether specific care was justified for injuries caused by the liability event from evidence about the nature of the injuries and the nature of the care. Landis v. Pioneer Mut. Cas. Co. (1961), 116 Ohio App. 309
[22 O.O.2d 13]."[22]
 {¶ 44} Our review of the record indicates that Hager's physical symptoms, about which there was considerable evidence, support the necessity of the medical services he received. Hager testified that he was oxygen-dependent because of his lung problems and needed nebulizer treatments several times a day. Dr. Amin and Dr. Rao confirmed Hager's dependence on oxygen and need for nebulizer treatments. Even Norfolk's own expert confirmed Hager's dependence on oxygen. Therefore, Hager's need for his respective medical care was necessary. We now turn to the reasonableness of the charges.
 {¶ 45} Hager failed to submit medical bills showing the amount he paid to receive the necessary medical care. However, Dr. Amin gave an estimate that the cost of Hager's medical treatment was between $600 and $700 a month. Although he stated this was a rough estimate, Norfolk never cross-examined him regarding this amount nor did it immediately object to his testimony. Norfolk waited until after closing argument to object to Dr. Amin's testimony regarding the medical expenses.
 {¶ 46} Although Dr. Amin's estimate included Hager's treatment for heart and blood pressure ailments, Dr. Amin testified that these conditions were related to Hager's lung problems. Norfolk's own expert also agreed that Hager's breathing problems were related to his heart problems. Accordingly, because there was testimony as to the reasonableness of Hager's need for medical treatment and cost thereof, Norfolk's sixth assigned error is overruled.
 Per Diem Argument {¶ 47} In its seventh assigned error, Norfolk argues the trial court improperly allowed Hager's counsel to seek a per diem amount as damages during his rebuttal portion of his closing argument.
 {¶ 48} In closing rebuttal, it is outside the scope of permissible argument to interject, for the first time, a specific monetary figure that the jury should award as damages.[23] The primary reason for prohibiting such statements is because opposing counsel is not given the opportunity to respond.[24] However, when counsel impermissibly requests a specific monetary amount from the jury in closing rebuttal, the trial court can alleviate any prejudicial effect by permitting defense counsel the opportunity to rebut. As this court in Bauman v.Schimitter,[25] held "Grossnickel requires only that defense counsel be given an opportunity for rebuttal."[26] By failing to request an opportunity to rebut Hager's per diem argument, Norfolk waived any error relating to this argument.[27] Accordingly, Norfolk's seventh assigned error is overruled.
 Remittitur {¶ 49} In its eighth assigned error, Norfolk argues the trial court erred in failing to reduce the jury's award by the percentage the jury allocated to Hager's pre-existing condition. We disagree.
 {¶ 50} To overturn a verdict, the court must find the general verdict and the interrogatory answers are both inconsistent and irreconcilable.[28] A court is required to make an effort to reconcile the general verdict and interrogatory answers whenever reasonably possible.[29]
 {¶ 51} In the instant case, the jury awarded a general verdict of $250,000. This was after answering several special interrogatories. In answer to interrogatory nine, the jurors were asked and answered as follows:
 "Question 9: What total amount do you find, without reduction for any negligence that you may find on plaintiff's part, will fairly and adequately compensate plaintiff for his lung condition?"
 $250,000.00"
 {¶ 52} Notably, the interrogatory did not instruct the jurors to reduce the amount by the percentage amount caused by Hager's pre-existing lung condition. In interrogatory number seven, the jury found Hager's pre-existing lung condition was 60 percent responsible for his lung problems. However, the trial court had instructed the jury: "If you find that there was an aggravation, you should determine, if you can, what portion of plaintiff's condition resulted from the aggravation, and make allowance in your verdict only for the aggravation."[30] Therefore, reading the interrogatories in conjunction with the trial court's instructions, it appears the jury deducted the 60 percent from the verdict. It is presumed the jury followed the trial court's instruction.[31] Accordingly, Norfolk's eighth assigned error is overruled.
 Settlement Information {¶ 53} In its ninth assigned error, Norfolk contends the trial court erred by refusing to compel Hager to disclose the settlement amounts that he received from his other asbestos litigation and by denying Norfolk the right to a set-off of the jury award. We agree.
 {¶ 54} The trial court initially denied the defendant's motion to set-off the jury award on October 25, 2005, in reliance on Ohio law at that time. The following day, the Ohio Supreme Court issued its opinion in Hess v. Norfolk S.Ry. Co.[32] The trial court conducted a hearing at which the Hess decision was discussed, and stated it would issue a ruling on the issue; however, the court never did. The court filed its rulings on the other post-trial motions, but never issued a ruling on this matter. Therefore, based on case law, we presume the trial court denied the motion.[33]
 {¶ 55} Hager concedes in his appellee's brief, and we agree, thatHess requires a set-off. The record in fact indicates that in spite of the court's failure to rule on the motion to compel, Hager voluntarily submitted a list of the entities with whom he settled and the accompanying amounts. Norfolk rejected this list because it did not include the language of the settlement and release for each entity.
 {¶ 56} Because Hess does entitle Norfolk to a pro tanto credit for the amounts of the settlements that Hager received from the other tortfeasors, we remand this matter for the trial court to determine the parameters of the motion to compel and the correct set-off. Accordingly, Norfolk's ninth assigned error has merit and is sustained.
 {¶ 57} We note that Hager attempts to include cross-assigned errors in his appellee's brief. However, this court previously dismissed Hager's attempt to file a cross-appeal regarding his fear of cancer claim because his notice was untimely filed. Hager's cross-assigned errors attempt to again raise issues regarding this claim. Moreover, R.C.2505.22 does not apply to the current case because we are affirming the verdict in Hager's favor, and are only remanding for a set-off against the amount. We, therefore, decline to address his cross-assigned errors.
[1] Several days after the trial concluded, Mr. Hager passed away. Therefore, his estate is the appellee for purposes of this appeal.
[2] See Appendix.
[3] R.C. 2313.43; see State v. Cornwell, 86 Ohio St.3d 560, 563,1999-Ohio-125; State v. Allard, 75 Ohio St.3d 482, 495,1996-Ohio-208.
[4] State v. Williams (1983), 6 Ohio St.3d 281, 288.
[5] State v. Tyler (1990), 50 Ohio St.3d 24, 31. Accord State v.Williams, 79 Ohio St.3d 1, 8, 1997-Ohio-407.
[6] Tr. at 270-272.
[7] Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
[8] McGarry v. Horlacher (2002), 149 Ohio App.3d 33; State v.Williams (1997), 79 Ohio St.3d 1, 8.
[8] Pool v. Wade (1996), 115 Ohio App.3d 449, 453. See, also, State v.Humphries (1992), 79 Ohio App.3d 589, 597; Cincinnati Ins. Co. v.Volkswagen of America, Inc. (1987), 41 Ohio App.3d 239.
[9] Wightman v. Conrail, 86 Ohio St.3d 431, 437, 1999-Ohio-119, citingPeters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299.
[10] State v. Adams (1980), 62 Ohio St.2d 151, 157.
[9] Cincinnati Ins. Co. v. Volks. of America, supra at 239,240.
[10] 49 U.S.C. § 20903; Tyree v. Burlington (W.D. Tenn. 1997), 973 F.Supp. 786.
[11] (1981), 67 Ohio St.2d 282, 284,
[12] Mosco v. Baltimore Ohio R.R. (Cir. 4, 1987), 817 F.2d 1088,1091; Reed v. Norfolk S. Ry. Co. (N.D. Ohio, 2004), 312 F. Supp.2d 924,926.
[13] Norfolk S.R. Co. v.. Baker (GA. 1999), 514 S.E.2d 448, 452;Day v. Union Pacific R.R. Co. (Kan. Dist. Ct. 2004), Case No. 03-2055GTV; Missouri Pacific Railroad Co. v. Brown (1993), 862 S.W.2d 636,639.
[14] Vance testimony at 143,44.
[15] (July 15, 1993), Cuyahoga App. No. 63070, 63071.
[16] (1957), 352 U.S. 1197.
[17] Blankenship v. CSX Transp., Inc. (July 15, 1993), Cuyahoga App. Nos. 63070, 63071.
[18] (1991), 59 Ohio St.3d 124, 126.
[19] See, also, Shesler v. Conrail (2003), 151 Ohio App.3d 462,472.
[20] Hunt v. Mayfield (1989), 65 Ohio App.3d 349, 352.
[21] (1983), 11 Ohio App.3d 27, 29
[22] Id. 29.
[23] Grossnickle v. Village of Germantown (1965),3 Ohio St.2d 96.
[24] Id. at 102; Miko v. Lincoln Nat'l. Corp. (Mar. 6, 1997), Cuyahoga App. No. 70826; Weiss v. Team Trucking, Inc. (Oct. 1, 1981), Cuyahoga App. No. 43380.
[25] (1989), 54 Ohio App.3d 51.
[26] Id.
[27] Hensley v. Rini-Rego Stop-n-Shop (Aug. 7, 1997), Cuyahoga App. No. 71552.
[28] See Hogan v. Finch (1966), 8 Ohio St.2d 31, 37; Becker v.BancOhio Natl. Bank (1985), 17 Ohio St.3d 158; Otte v. Dayton Power Light Co. (1988), 37 Ohio St.3d 33.
[29] Otte, supra.
[30] Tr. at 1198.
[31] State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160; State v.Fears, 86 Ohio St.3d 329, 334, 1999-Ohio-111; State v. Leonard,104 Ohio St.3d 54, 2004-Ohio-6235, at ¶ 157.
[32] 106 Ohio St.3d 389
[33] The trial court failed to rule on Norfolk's motion for reconsideration. However, ordinarily, any pending motions the trial court does not expressly rule on when it renders final judgment are deemed implicitly overruled. Carver v. Map Corporation, Scioto App. No. 01CA2757, 2001-Ohio-2403; In re Lewis (Apr. 30, 1997), Athens App. Nos. 96CA1760 and 96CA1763. Therefore, if the trial rendered a final judgment in this case, Appellants' motion for reconsideration is deemed overruled. The trial court's failure to explicitly rule on this motion would not render an otherwise final appealable order interlocutory.Savage v. Cody-Zeigler, Inc., 4th Dist. No. 06CA5,2006-Ohio-2760.
Judgment affirmed in part and reversed in part for proceedings consistent with this opinion.
It is ordered that appellee and appellant share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., P. J., and JOSEPH J. NAHRA, J.*, CONCUR.
* SITTING BY ASSIGNMENT: JUDGE JOSEPH J. NAHRA, RETIRED, OF THE EIGHTH DISTRICT COURT OF APPEALS.
 Appendix
"I. The trial court committed errors to the material prejudice ofNorfolk during the jury selection process."
"II. The trial court committed numerous evidentiary errors duringtrial. The cumulative effect of the trial court's erroneous evidentiaryrulings prevented Norfolk from fully and adequately presenting itsdefense and denied Norfolk a fair trial. Thus, Norfolk is entitled to anew trial."
"III. Norfolk was entitled to a directed verdict on the LocomotiveInspection Act claim relative to diesel exposure."
"IV. The trial court committed an error of law to the materialprejudice of Norfolk by instructing the jury that the railroad is liableif its negligence played any part, even the slightest, in producing Mr.Hager's lung condition."
"V. The trial court erred to the prejudice of Norfolk by permittingplaintiff-appellee's treating physician, Dr. Mayank Amin, to render theopinion that Mr. Hager had asbestosis as this opinion was based upon theopinions of other experts and reports not admitted in evidence inviolation of Evid.R. 703."
"VI. The trial court erred to the material prejudice of Norfolk bysubmitting the issue of medical expenses to the jury whenplaintiff-appellee failed to demonstrate that such costs were reasonableand necessary."
"VII. Norfolk suffered unfair prejudice as a result ofplaintiff-appellee counsel's improper per diem argument which waspresented for the first time during the rebuttal portion of his closingremarks."
"VIII. The trial court erred in refusing to reduce the jury award bythe percentage the jury allocated to Eugene Hager's pre-existing medicalcondition of Kartagener's Syndrome."
"IX. The trial court committed prejudicial error by refusing to compelplaintiff-appellee to disclose requested settlement information anddenying Norfolk the right to a set-off of the jury award in accordancewith Hess v. Norfolk S. Ry. Co., 106 Ohio St.3d 389,2005-Ohio-5408."